[603 NYS2d 910]

BARRY E. SNYDER, SR., Doing Business as SENECA HAWK, Appellant, v JAMES W. WETZLER, as Commissioner of Taxation and Finance of the State of New York, et al., Respondents.

Third Department, November 10, 1993

*Timothy J. Toohey,* Lewiston, for appellant.

*Robert Abrams, Attorney-General,* Albany *(Lew A. Millenbach* and *Peter G. Crary* of counsel), for respondents.

*Block & Colucci, P. C.,* Buffalo *(Joseph F. Crangle* of counsel), for Seneca Nation of Indians and others, *amici curiae.*

## OPINION OF THE COURT

WEISS, P. J.

Plaintiff is a member of the Seneca Nation of Indians who conducts a retail business on the Cattaraugus Reservation in western New York for the sale of cigarettes and motor fuel under the assumed name of Seneca Hawk. A substantial portion of his business is derived from the sale at retail of cigarettes and gasoline to individual purchasers other than Indians. Defendants assessed excise and sales taxes against plaintiff on those sales to non-Indians which he was required but failed to collect and remit (Tax Law §§ 289-c, 471-474, 1132). Plaintiff commenced this action seeking a declaration that the State was without power to impose or collect taxes on such sales made within the Indian reservation. Supreme Court disagreed and made a declaration in favor of defendants.

In this appeal, plaintiff has focused his argument upon the following: (1) the historical development of the immunity of Indian lands from taxation, (2) the prohibition against State taxation of Indians by the Supremacy Clause of the US Constitution and Federal law, and (3) that New York lacks jurisdiction to collect taxes from non-Indians by assessments made against an Indian. The *amici* seek to distinguish cases from other States which uphold imposition of sales taxes by emphasizing that the Indian exemption from taxation in New York is the result of the uniqueness of its treaties with

Indians. The State, in opposition, asserts its power to collect excise and sales taxes on sales to non-Indians in reliance upon those United States Supreme Court decisions upholding similar taxation by other States. Plaintiff and the *amici* contend that the language of treaties between the Seneca Indians and the United States, the Court of Appeals decision in *Fellows v Denniston* (23 NY 420, *revd sub nom. New York Indians,* 72 US [5 Wall] 761), the Federal Indian trader statutes (25 USC § 261 *et seq.),* and section 6 of the Indian Law all establish that New York lacks legal authority to tax any transactions on the Cattaraugus Reservation.* We disagree.

It is beyond cavil that New York has no authority to tax the land upon which an Indian reservation is located. However, even with liberal construction in favor of the Indians, and with ambiguous provisions interpreted to their benefit *(see, Montana v Blackfeet Tribe,* 471 US 759, 766), we find unpersuasive plaintiff's contention that he need not aid New York in the collection and enforcement of the subject sales and excise taxes on sales to non-Indians.

We begin with an analysis of a series of treaties culminating with the Treaty of 1842 concluded at Buffalo Creek which defined the Reservations at Cattaraugus and Allegany and restored the rights of the Seneca Indians thereto. Article NINTH of the Treaty of 1842 (7 US Stat 586, 590) contains the only reference made to taxes and reads as follows: "ARTICLE NINTH. The parties to this compact mutually agree to solicit the influence of the Government of the United States to protect such of the lands of the Seneca Indians, within the State of New York, as may from time to time remain in their possession from all taxes, and assessments for roads, highways, or any other purpose until such lands shall be sold and conveyed by the said Indians, and the possession thereof shall have been relinquished by them." We find the treaty clearly refers only to taxes levied upon real property or land. The history of the Treaty of 1842 is recited in *New York Indians* (72 US [5 Wall] 761, 766-768, *supra),* where the issue was focused on real property taxes and assessments upon the rights to the land comprising the Cattaraugus and Allegany Reservations in New York. Pursuant to the earlier Treaty of 1838 made with the New York Indians (7 US Stat 550), also concluded at Buffalo Creek, the Seneca Reservations were sold

---

* The complaint alleges only Federal bases for the lack of State power to assess, levy and impose the taxes.

to Thomas Ogden and Joseph Fellows, assignees of the preemption rights owned by Massachusetts. The treaty provided a five-year period during which the Indians could occupy the land until the tribes were relocated. Certain disagreements with the Treaty of 1838 within the tribe membership ultimately were resolved in the Treaty of 1842, which restored the Cattaraugus and Allegany Reservation lands to the Seneca Indians subject, however, to the preemption rights of Ogden and Fellows.

During the period of Indian occupancy between the two treaties, the County of Erie levied tax assessments against lands within the reservations to defray the cost of building roads and bridges therein. The Comptroller was authorized by law (L 1841, ch 166) to advertise and sell the lands for nonpayment of the taxes, subject, however, to the Indians' right to occupy the lands. In *Fellows v Denniston* (23 NY 420, *supra*), the Court of Appeals held the law was illegal and could not disturb the right of the Indians to quiet enjoyment of the land guaranteed by their treaty with the United States. These same taxes upon, or relating to, the reservation lands ultimately resulted in the enactment of Laws of 1857 (ch 45) *(see, New York Indians, supra,* at 771). That statute provided that tax titles acquired by the State for nonpayment of land taxes during the five-year transitional occupancy by the Indians be released and such lots or parcels be conveyed by the Comptroller back to the Seneca Indians, and, further, that the related claims of non-Indians who had purchased tax titles to lands within the reservations be reimbursed. It is section 4 of that statute from which Indian Law § 6, as codified in 1909, was derived. Indian Law § 6 reads as follows:

"§ 6. Exemption of reservation lands from taxation.

"No taxes shall be assessed, for any purpose whatever, upon any Indian reservation in this state, so long as the land of such reservation shall remain the property of the nation, tribe or band occupying the same."

This statute, by its title and from the foregoing history, obviously relates solely to the exemption of reservation *lands* from taxation.

Nor do we find that plaintiff is aided by 25 USC § 233. In vesting certain jurisdiction in civil actions against Indians in New York courts, this Federal statute provides: "That nothing herein contained shall be construed as subjecting the lands within any Indian reservation in the State of New York to

taxation for State or local purposes" (25 USC § 233). This provision can be read in no manner other than relating solely to the taxation of land.

We turn next to plaintiff's argument that exclusive authority over Indian tribes is vested in the Federal Government which retains preemptive power in all Indian matters. We find no quarrel with plaintiff's premise that the Federal Indian trader statutes (25 USC § 261 *et seq.)* enacted pursuant to US Constitution, article I, § 8 (cl [3]) repose in the Commissioner of Indian Affairs sole power and authority to regulate trade with the Indians *(Attea & Bros. v Department of Taxation & Fin.,* 81 NY2d 417, 424). The all-inclusive regulations promulgated by the Commissioner of Indian Affairs and the enactment of Federal statutes have been characterized as "in themselves sufficient to show that Congress has taken the business of Indian trading on reservations so fully in hand that no room remains for state laws imposing additional burdens upon traders" *(Warren Trading Post v Tax Commn.,* 380 US 685, 690). The limitations are intended to prevent disadvantages or elimination of significant burdens on traders, i.e., wholesalers who sell to Indian retailers *(see, Attea & Bros. v Department of Taxation & Fin., supra; Herzog Bros. Trucking v State Tax Commn.,* 69 NY2d 536, *vacated and remanded* 487 US 1212, *decision adhered to on remand* 72 NY2d 720). Nor do we question the philosophical or pragmatic purposes which proscribe direct State taxation of Indian lands or Indian income from activities carried on within the boundaries of the reservation, absent congressional consent *(see, McClanahan v Arizona State Tax Commn.,* 411 US 164; *Mescalero Apache Tribe v Jones,* 411 US 145).

But in the case before us we are not faced with taxes upon land, nor involvement with Indian traders, nor even attempts to tax Indian tribes or individual tribe members. Quite to the contrary, we are required to consider whether plaintiff's assertions that his status as an Indian retailer, with a place of business on the Cattaraugus Reservation, immunizes him from the requirement to collect and remit State sales and excise taxes on the purchases of cigarettes and motor fuel by his non-Indian customers. This issue is not one of first impression in either the courts of this State or the United States Supreme Court.

The departure from strict prohibition against the imposition of any taxes upon retail sales by Indian merchants is found in the 1976 United States Supreme Court decision in *Moe v*

*Salish & Kootenai Tribes* (425 US 463), which held that Montana could require the precollection of the tax imposed by law upon the non-Indian purchaser of cigarettes. The Supreme Court found that the proscription against tax burdens upon the wholesaler, expressed in *Warren Trading Post v Tax Commn. (supra),* did not preclude a tax on that portion of receipts attributable to on-reservation sales to non-Indians. The Court, quoting the District Court, noted that " 'it is the non-Indian consumer or user who saves the tax and reaps the benefit of the tax exemption' " *(Moe v Salish & Kootenai Tribes, supra,* at 481-482) and it further observed that "[w]ithout the simple expedient of having the retailer collect the sales tax from non-Indian purchasers, it is clear that wholesale violations of the law by the latter class will go virtually unchecked" *(supra,* at 482).

In 1980, the United States Supreme Court addressed an excise tax on cigarettes imposed by Washington which was enforced through the use of tax stamps, plus a sales tax. The regulations required both taxes to be collected by Indian tribal sellers of cigarettes from on-reservation sales to non-Indians. The tribe unsuccessfully attempted to preempt the State by imposing its own miniscule tax through the exercise of properly delegated Federal power to do so *(see, Washington v Confederated Tribes,* 447 US 134, 152, 156). The Court, citing to *Moe,* held that Washington could impose its cigarette excise tax and general sales tax upon on-reservation purchases of cigarettes by nonmembers of Indian tribes and that the economic impact of the tax resulting from the loss of a competitive advantage with respect to businesses in the surrounding areas did not warrant exempting the Indians from the taxes *(supra,* at 157).

In 1985, the United States Supreme Court, in *California Bd. of Equalization v Chemehuevi Tribe* (474 US 9), held that an excise tax imposed on the distribution of cigarettes by California, in which the legal incidence of the tax falls on non-Indian purchasers, could be enforced and the burden of collecting that tax from purchasers be imposed on the tribe. The Court rejected the argument that the taxing statute could only be valid if it explicitly states that the tax is passed through to the non-Indian purchaser and is required to be collected by the Indian retailer *(supra,* at 11).

We come finally to *Oklahoma Tax Commn. v Potawatomi Tribe* (498 US 505), decided in 1991, in which the United States Supreme Court held that the doctrine of sovereign

immunity did not excuse a tribe from all obligations to assist in the collection of a validly imposed Oklahoma tax on sales of cigarettes made at a convenience store owned and operated by the tribe on land held in trust for it by the Federal Government. The Court observed that under *Moe v Salish & Kootenai Tribes (supra)* and *Washington v Confederated Tribes (supra)*, the requirement that tribal sellers collect the taxes from non-Indian purchasers was a minimal burden justified by the State's interest in assessing payment of lawful taxes. In response to Oklahoma's complaint that tribal protection from suit under principles of sovereign immunity gave the State a "right without any remedy", the Supreme Court said, "We have never held that individual agents or officers of a tribe are not liable for damages in actions brought by the State" *(Oklahoma Tax Commn. v Potawatomi Tribe, supra,* at 514).

So, too, here. The New York statute has placed the legal incidence of the excise and sales taxes on tobacco and motor fuel specifically upon the consumer (Tax Law § 289-c [2]; § 471 [2]; § 1132 [a]; § 1133 [b]). We find unpersuasive the contentions by plaintiff and the *amici* that the *Moe, Washington* and *Potawatomi* cases are distinguishable because the treaties between New York and the six nations of the Iroquois Confederacy, of which the Seneca Tribe is a member, are unique in that the ownership of their lands, unlike those in the aforesaid cases, is original, absolute and exclusive.

It should not be necessary to again emphasize that this is not a case about land taxes, personal property taxes, or income taxes, nor has any Indian been subjected to taxation. Rather, "the competitive advantage which the Indian seller doing business on tribal land enjoys over all other cigarette retailers, within and without the reservation, is dependent on the extent to which the non-Indian purchaser is willing to flout *his* legal obligation to pay the tax" *(Moe v Salish & Kootenai Tribes, supra,* at 482 [emphasis in original]).

In sum, we hold that "States may validly impose a nondiscriminatory tax on the non-Indian customers of Indian retailers doing business on reservations, however, even if the tax seriously disadvantages or eliminates the Indian retailer's business with non-Indians" *(Herzog Bros. Trucking v State Tax Commn.,* 69 NY2d 536, 543, *supra; see, Washington v Confederated Tribes,* 447 US 134, 151, *supra).*

MIKOLL, MERCURE and MAHONEY, JJ., concur.

Ordered that the judgment is affirmed, without costs.