[667 NYS2d 141]

In the Matter of NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, Appellant, v WILLIAM A. BRAMHALL et al., Respondents. (Action No. 1.)

In the Matter of NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, Appellant, v BRUCE K. FADDIES et al., Respondents. (Action No. 2.)

Fourth Department, July 25, 1997

**APPEARANCES OF COUNSEL**

*Dennis C. Vacco, Attorney-General,* Buffalo *(Peter Sullivan* of counsel), for appellants.

*Zdarsky, Sawicki & Agostinelli,* Buffalo *(Joseph Zdarsky* of counsel), for Triple J's, respondent. (Action No. 1.)

*Block & Colucci, P. C.,* Buffalo *(Joseph Crangle* of counsel), for Seneca Hawk, respondent. (Action No. 2.)

*Toohey & Dowd, P. C.,* Lewiston *(Timothy Toohey* of counsel), for respondents. (Action Nos. 1 and 2.)

## OPINION OF THE COURT

BALIO, J.

On this appeal, we must determine whether Supreme Court erred in denying the motions of the New York State Department of Taxation and Finance (Department) to confirm the temporary seizures of motor fuel being transported to Indian retailers on the Cattaraugus Reservation of the Seneca Nation of Indians (Seneca Nation). In denying the motions, the court agreed with the contentions of respondents Seneca Hawk and Triple J's that, in seizing the motor fuel, the Department had selectively enforced the State's excise and sales tax laws with respect to motor fuel. We conclude that the court erred and that the motions to confirm should be granted.

The State of New York imposes an excise tax on motor fuel that is imported, manufactured or sold in the State *(see,* Tax Law § 284). State and local governments also impose a sales tax on motor fuel that is imported, manufactured or sold in the State *(see,* Tax Law §§ 1102, 1105). Prior to 1985, those taxes were collected when the motor fuel was sold for the first time by a distributor to a nondistributor. Because transfers of motor fuel between distributors were tax free, some distributors transferred the fuel between themselves, transferring the same fuel, often on paper only, several times on the same day. Those distributors frequently engaged in "daisy-chain" schemes, concealing certain transfers, transferring the fuel to insolvent or nonexistent parties or falsely reporting that the taxes had been paid. The Department documented an annual loss of $90 million from the evasion of the excise and sales taxes, and industry experts estimated that the combined State and local revenue loss could have been as high as $200 million *(see,* Mem of State Exec Dept, 1985 McKinney's Session Laws of NY, at 2955).

In an effort to deter such large-scale tax evasion, the Legislature enacted a different enforcement procedure, effective June 1, 1985. Under that procedure, excise and sales taxes are collected on the initial importation, sale or delivery of mo-

tor fuel to a registered dealer, thereby eliminating the tax-free transfers between registered distributors. Distributors must comply with strict standards in the registration process and must file a bond or other acceptable security to cover their liability for the excise and sales taxes (*see,* L 1985, ch 44, § 3). The ultimate tax burden nevertheless remains with the consumer. Each distributor is authorized to shift the tax burden to its transferee, with the final seller collecting the tax based on the actual selling price and then paying any net tax due or claiming a credit for any difference between the amount of tax collected and the tax paid on the sale to the first registered distributor (*see,* Mem of State Exec Dept, 1985 McKinney's Session Laws of NY, at 2960).

In 1986 the Legislature authorized physical seizure and forfeiture as part of its enforcement scheme in order to curb the evasion of excise and sales taxes (*see,* L 1986, ch 276, § 29). Tax Law § 1848 (a) permits a police officer or peace officer "to seize and take possession of such motor fuel, together with the vehicle or other means of transportation used to transport such motor fuel" if the person importing or causing the motor fuel to be imported is not a registered distributor. The Department must file a motion in Supreme Court to confirm the temporary seizure within five business days of the seizure (Tax Law § 1848 [c]). At any time within 45 days of the seizure, the Department may commence an action for forfeiture of the seized property; if no action is commenced by the Department, the seized property must be returned to the owners thereof (Tax Law § 1848 [d]).

Additionally, the Legislature amended Tax Law § 286-b (1) in 1986 to require the operator of every motor vehicle transporting motor fuel within New York to maintain a manifest indicating, *inter alia,* the name and address of every person to whom he is to deliver the fuel, the place of delivery, and, if the fuel is being imported into New York, the name of the distributor importing or causing the fuel to be imported into New York (*see,* L 1986, ch 276, § 7). If the operator fails to produce the manifest for inspection by the police or Department agents, or if the manifest does not include the name of a registered distributor, it is presumed that the fuel is intended for sale, use, distribution, or storage in this State and is being imported or caused to be imported by someone who is not a registered distributor (*see,* Tax Law § 286-b [1], as amended by L 1986, ch 276, § 7).

The Commissioner of Taxation and Finance promulgated regulations, effective April 1, 1997, governing the distribution

to retailers on Indian reservations of motor fuel that is intended for resale to qualified Indian consumers. Pursuant to those regulations, importers, transporters, distributors or registered reservation dealers are not required to pay the excise and sales taxes on motor fuel delivered to registered reservation dealers, and registered reservation dealers are not required to maintain records of all exempt sales to qualified Indian consumers (*see*, 20 NYCRR 414.6, 414.7). The regulations also limit the amount of exempt motor fuel that may be supplied to registered reservation dealers to an amount that is based upon the "probable demand" for the fuel by qualified Indian consumers (20 NYCRR 414.7 [d]). Those provisions apply only to motor fuel that is intended for retail sale to Indians.

On April 4, 1997, peace officers employed by the Department stopped a tractor and tanker trailer leased to respondent Queensway Tank Lines, Inc. (Queensway), and driven by respondent William A. Bramhall. Bramhall did not produce the manifest required by Tax Law § 286-b (1), and documents in his possession indicated that 8,506 gallons of unleaded motor fuel were consigned to respondent Mohawk Petroleum Wholesale, an agent of the St. Regis Mohawk Tribe, and were to be delivered to Triple J's, a gasoline retailer located on the Cattaraugus Reservation of the Seneca Nation. The officers seized the fuel and the tractor and tanker trailer.

On April 6, 1997, the Department seized another tractor and tanker trailer leased to Queensway and driven by respondent Bruce Kenneth Faddies. Faddies failed to produce the required manifest for inspection, and Department agents ascertained from documents in his possession that about 8,538 gallons of unleaded motor fuel were en route to Seneca Hawk, another gasoline retailer located on the Cattaraugus Reservation of the Seneca Nation.

The Department moved on April 11, 1997 to confirm those seizures. In her supporting affidavits, the Department police officer who supervised the seizures stated that neither driver was able to produce the required manifest for inspection and that neither Queensway, Mohawk Petroleum Wholesale, Triple J's, Seneca Hawk nor any other person or entity having any relationship to either transportation of the fuel is a registered distributor. Supreme Court denied the motions, concluding that the Department had selectively enforced its motor fuel excise and sales tax laws, thereby violating respondents' right to "equal protection of laws." (172 Misc 2d 934, 941.) The court further concluded that, even if confirmation were in order, it

would be obligated at the final forfeiture hearing in the exercise of its discretion to dismiss the complaints and terminate the forfeitures in the interest of justice pursuant to Tax Law § 1848 (d) (4) (D). We conclude that the court erred and therefore that the order and judgment should be reversed and the motions granted.

### CONFIRMATION OF TEMPORARY SEIZURES

On a motion to confirm a temporary seizure, the Department must show that it has a cause of action for forfeiture of the fuel and that it has grounds for confirmation of the seizure (Tax Law § 1848 [c]). The court must confirm the seizure if it determines that there is a "substantial probability" that the Department will prevail on the issue of forfeiture (Tax Law § 1848 [c]). To prevail on the issue of forfeiture, the Department must establish by clear and convincing evidence that "the person importing or causing such motor fuel to be imported was not registered as a distributor" (Tax Law § 1848 [d] [3]). The Department met that burden.

Pursuant to Tax Law § 286-b (2), the Department has prescribed a manifest form to be used by those importing or transporting motor fuel into New York (see, 20 NYCRR 417.2). The Department established that neither Bramhall nor Faddies produced that form for inspection. "The absence of the manifest required by [Tax Law § 286-b] shall give rise to a presumption that the automotive fuel being transported is intended for sale, use, distribution or storage in this state and is being imported or caused to be imported by other than a registered distributor" (Tax Law § 286-b [1]). Further, Bramhall and Faddies produced documents indicating that they were transporting the fuel in their possession either to Triple J's or Seneca Hawk, and the Department established that neither Triple J's nor Seneca Hawk is a registered distributor. Thus, the failure of Bramhall and Faddies to produce documentation identifying a registered distributor also gives rise to a presumption that the fuel "is being imported or caused to be imported by other than a registered distributor" (Tax Law § 286-b [1]). Respondents submitted no proof in rebuttal. Thus, because the uncontroverted proof establishes that Bramhall and Faddies failed to produce the requisite manifest and were transporting motor fuel that was being imported or caused to be imported by an unregistered distributor, the court erred in denying the motion to confirm.

The court also erred in concluding that, even if confirmation of the seizures were in order, the court nevertheless would be

obligated, at the final forfeiture hearing, to dismiss the forfeiture action in the interest of justice pursuant to Tax Law § 1848 (d) (4) (A). Although that subdivision authorizes the court to dismiss a forfeiture action if it finds some compelling factor or circumstance demonstrating that forfeiture would not serve the ends of justice, the court may not grant that relief *sua sponte*. Section 1848 (d) (4) (A) of the Tax Law provides that, "[a]t any time during the pendency of a forfeiture action, the department of taxation and finance or a defendant may apply for an order dismissing the complaint and terminating the forfeiture action in the interest of justice." In any event, because no action for forfeiture was pending at the time of the motion to confirm, there was no action to dismiss. Further, because the Department has up to 45 days after a seizure to commence an action for forfeiture (*see,* Tax Law § 1848 [d] [1]), typically no forfeiture action would be pending at the time of a motion to confirm, which must be brought within five business days of the seizure. Moreover, after moving to confirm a seizure, the Department could decide not to commence a forfeiture action, in which event the seized property would be restored to the owners (*see,* Tax Law § 1848 [d] [1]). Thus, the court's consideration of the remedy of dismissal was premature, speculative and inappropriate.

### SELECTIVE ENFORCEMENT

■ The court further erred in refusing to confirm the seizures on the ground that the Department had selectively enforced the tax laws and regulations, thereby denying respondents equal protection of the laws.

At the outset, we note that Triple J's is the only respondent to assert a claim of selective enforcement. Several respondents did not appear in opposition to the motion. Neither Queensway nor Seneca Hawk, who did appear, raised a claim of selective enforcement. Thus, the court erred in denying the motion to confirm the April 6, 1997 seizure of the shipment en route to Seneca Hawk on that ground.

In opposing the motion to confirm the April 4, 1997 seizure, J. Conrad Seneca, a member of the Tribal Council of the Seneca Nation and the owner of Triple J's, alleged that the Department unlawfully entered into interim agreements with several Indian nations or tribes purporting to exempt Indian businesses at certain reservations from compliance with the motor fuel and cigarette tax regulations if they raise their prices to levels that are competitive with prices set by non-Indian retail-

ers. Seneca further alleged that the Department, through "a selective and discriminatory application of state motor fuel regulations filed on March 6, 1996", seeks to eliminate certain Indian businesses in order to benefit non-Indian competitors, by establishing minimum prices for motor fuel sold at those Indian businesses.

Triple J's failed to support its claim of selective enforcement by demonstrating that it was the victim of "unjust and illegal discriminations between persons in similar circumstances" (*Yick Wo v Hopkins*, 118 US 356, 374). To succeed on such a claim, "there must be not only a showing that the law was not applied to others similarly situated but also that the selective application of the law was deliberately based upon an impermissible standard such as race, religion or some other arbitrary classification" (*Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d 686, 693). Triple J's does not contend that the Department selectively enforced the motor fuel excise and sales tax laws and regulations based on race. In any event, "[t]o establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted" (*United States v Armstrong*, 517 US 456, 465; *see also, Ah Sin v Wittman*, 198 US 500, 507-508). Triple J's submitted no evidence that motor fuel is being imported, manufactured or sold to non-Indian unregistered distributors and that the Department has failed to enforce the tax laws and regulations with respect to such distributors.

Triple J's submitted no evidence that the Department has failed to apply the tax laws to others similarly situated or that, if it has, the selective enforcement is based upon some arbitrary classification. Although the State is prohibited from imposing excise and sales taxes on Indian consumers, it may constitutionally tax the sale of motor fuel on Indian reservations to non-Indians (*see, Department of Taxation & Fin. v Milhelm Attea & Bros.*, 512 US 61, 64). Because the Department had not aggressively enforced collection of excise and sales taxes on motor fuel and other items sold on Indian reservations to non-Indian consumers, an association representing convenience store owners and operators obtained an order compelling the Department to enforce the collection of such taxes on and off the Indian reservations; the order left the method of equal enforcement to the Department (*see, Matter of New York Assn. of Convenience Stores v Urbach*, 170 Misc 2d 445, *mod on other grounds* 230 AD2d 338). According to materials submit-

ted by Triple J's, the Department attempted to enter into agreements concerning the collection of taxes or price parity on cigarettes and motor fuel with all of the Indian nations or tribes on reservations within New York, including the Seneca Nation. The Seneca Nation refused to agree, and the Department was not successful in reaching an interim agreement with the Seneca Nation or Indians on the Poospatuck or St. Regis Reservations. Absent an interim agreement with the Seneca Nation and in an apparent effort to comply with the order in *Matter of New York Assn. of Convenience Stores v Urbach,* the Department exercised its seizure powers on April 4 and 6, 1997. According to the Department, that enforcement remedy was employed because other enforcement efforts, including the negotiation of an interim agreement, failed. Further, because the Seneca Nation did not reach an interim accord with the Department, it was not situated similarly to those Indian nations and tribes that did. Thus, Triple J's failed to show that the law was not applied to others similarly situated and that the allegedly selective application was based upon an arbitrary classification (*see, Matter of 303 W. 42nd St. Corp. v Klein, supra,* at 693).

We also reject the contention of Triple J's that enforcement of the so-called 1996 Regulations (20 NYCRR 414.6, 414.7) deprived it of equal protection of the law. The seizure was based upon the failure of Bramhall to produce for inspection the uniform manifest as required by Tax Law § 286-b, and the failure to produce documentation showing that the motor fuel was being imported, manufactured or sold by a registered distributor.

### VALIDITY OF INTERIM AGREEMENTS

■ The court further erred in finding that the interim agreements reached between the Department and certain Indian nations and tribes constitute "an unlawful usurpation of legislative power" and that the agreements are illegal and unenforceable (172 Misc 2d, *supra,* at 941). No respondent raised that issue (*see,* CPLR 2215; *Anderson Props. v Sawhill Tubular Div.,* 149 AD2d 950; *Guggenheim v Guggenheim,* 109 AD2d 1012), the Indian nations and tribes that entered into those interim agreements were not parties to the motions to confirm, and the Department was deprived of the opportunity to respond. Under the circumstances, it was improper for the court to grant that sweeping relief (*see, Matter of New York Assn. of Convenience Stores v Urbach, supra,* 230 AD2d, at 344).

OTHER CONTENTIONS BY RESPONDENTS

■ Seneca Hawk and Triple J's contend that the State cannot tax transactions occurring on the reservations of the Seneca Nation because the Nation, having never been conquered by the United States, is sovereign and beyond the reach of State law. Those contentions lack merit. The immunity from taxation that respondents claim here is not conferred by Federal treaties (*see,* 7 US Stat 15, 33, 44, 586) or by case law interpreting those treaties (*see, New York Indians,* 5 Wall [72 US] 761; *Snyder v Wetzler,* 193 AD2d 329, *affd* 84 NY2d 941; *Fellows v Denniston,* 23 NY 420). The 1784, 1789 and 1794 Treaties (7 US Stat 15, 33, 44) do not confer any immunity from taxation, and the 1842 Treaty (7 US Stat 586), although it prohibits the State from taxing reservation land, does not bar the imposition of excise and sales taxes on cigarettes and motor fuel sold to non-Indians on the Seneca Nation's reservations (*see, Snyder v Wetzler, supra,* 193 AD2d, at 331). Indian Law § 6 and 25 USC § 233 similarly bar only the imposition of a tax on reservation land (*Snyder v Wetzler, supra,* 193 AD2d, at 332-333).

Further, the sovereign rights of the Seneca Nation do not prohibit application of the State's tax laws to sales on the Seneca Nation's reservations to non-Indians. " '[E]ven on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law' " (*Rice v Rehner,* 463 US 713, 718, quoting *Mescalero Apache Tribe v Jones,* 411 US 145, 148). State taxation of sales of cigarettes and other products to non-Indians on reservations and other taxes directed toward the activity of non-Indians on reservations have been sustained notwithstanding Indian claims of sovereignty (*see, Department of Taxation & Fin. v Milhelm Attea & Bros., supra; Cotton Petroleum Corp. v New Mexico,* 490 US 163; *Washington v Confederated Tribes,* 447 US 134, *reh denied* 448 US 911; *Moe v Salish & Kootenai Tribes,* 425 US 463). Moreover, by seizing motor fuel and the equipment transporting it before it reaches a reservation, the State enforces its valid tax laws "without unnecessarily intruding on core tribal interests" (*Washington v Confederated Tribes, supra,* at 162).

Tax Law § 283 (1) provides that only a registered distributor may import motor fuel or cause such fuel to be imported "into the state, for use, distribution, storage or sale within the state". Seneca Hawk contends that, because the Seneca Nation is a sovereign nation and its reservations are not part of New York

State, the seized motor fuel was not destined for use, distribution, storage or sale "within the state". That contention was implicitly rejected by this Court in *Matter of 1750 Cases of Liquor* (231 AD2d 947, *affg* 166 Misc 2d 739), a case involving a challenge to the seizure of liquor pursuant to tax laws with statutory language analogous to that in section 283 (1). We conclude that the contention, insofar as it relates to Tax Law § 283 (1), also lacks merit (*see also, New York State Dept. of Taxation & Fin. v Tyler Distrib. Ctrs.*, 225 AD2d 936, 938).

Likewise without merit is Seneca Hawk's contention that New York's motor fuel tax and enforcement scheme violates the Indian Trader Statutes (25 USC § 261 *et seq.*) by imposing excessive burdens on Indian commerce and trading (*see, Department of Taxation & Fin. v Milhelm Attea & Bros., supra*, at 73-77; *Washington v Confederated Tribes, supra*, at 157; *Moe v Salish & Kootenai Tribes, supra*, at 482-483; *New York State Dept. of Taxation & Fin. v St. Regis Group [Mohawk Akwesasne Reservation]*, 217 AD2d 214, 220; *Matter of DeLoronde v New York State Tax Commn.*, 142 AD2d 90, 92, *lv denied* 73 NY2d 986).

We have reviewed the remaining contentions of respondents and conclude that they are without merit.

### CONCLUSION

Accordingly, the order and judgment should be reversed and the motions to confirm the seizures granted.

DENMAN, P. J., PINE, CALLAHAN and FALLON, JJ., concur.

Order and judgment unanimously reversed, on the law, without costs, and motions granted.