Matter of Global Cos. LLC v New York State Tax Appeals Trib. (2024 NY Slip Op 02564)

Matter of Global Cos. LLC v New York State Tax Appeals Trib.

2024 NY Slip Op 02564

Decided on May 9, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 9, 2024

CV-23-0108
[*1]In the Matter of Global Companies LLC, Petitioner,
v
New York State Tax Appeals Tribunal et al., Respondents.

Calendar Date:March 26, 2024

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Wichler & Gobetz PC, Suffern (Kenneth C. Gobetz of counsel) and Harris Beach PLLC, White Plains (Brian D. Ginsberg of counsel), for petitioner.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for Acting Commissioner of Taxation and Finance, respondent.

Mackey, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal denying petitioner's request for a refund of, among other things, motor fuel excise tax imposed under Tax Law article 12-A.
Petitioner, a registered distributor of motor fuel pursuant to Tax Law article 12-A, was assessed taxes on 13,838,236 gallons of motor fuel that it brought into New York between May 2011 and February 2012 (see Tax Law § 282 [1] [a]). It delivered the fuel to CITGO Petroleum Corporation (hereinafter CITGO) pursuant to an exchange agreement between petitioner and CITGO, whereby either company was permitted to remove fuel product from the terminal of its counterpart in exchange for similar treatment at a different time and location by the other. The dispute at the heart of this case is whether petitioner is liable to pay the taxes due to New York State for importation of that fuel into the state.
After an audit of petitioner for the period December 1, 2008, through April 30, 2013, the Department of Taxation and Finance (hereinafter the Department) issued a notice of determination that petitioner owed taxes on the fuel in question. Petitioner paid the taxes under protest in February 2019 and thereafter sought a refund of its payments, arguing that CITGO had already paid the applicable taxes. The Department denied petitioner's refund request and petitioner thereafter filed a petition for redetermination with the Division of Tax Appeals. Following a hearing, an Administrative Law Judge (hereinafter ALJ) sustained the Department's determination, finding that petitioner failed to prove that CITGO had actually paid the taxes on the fuel, and, therefore, failed to meet its burden of showing its entitlement to a refund. Petitioner filed an exception and respondent Tax Appeals Tribunal affirmed the ALJ's determination. Petitioner then commenced this CPLR article 78 proceeding challenging the Tribunal's determination.
We start with the appropriate standard of review. "It is well settled that this Court's review of the Tribunal's determination is limited to whether it has a rational basis and is supported by substantial evidence" (Matter of Zuckerman v Tax Appeals Trib. of the State of N.Y., 174 AD3d 1073, 1074 [3d Dept 2019] [internal quotation marks and citations omitted]; see Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 210 AD3d 86, 88-89 [3d Dept 2022], affd ___ NY3d ___ [Apr. 23, 2024]). "Statutes creating tax exemptions or credits are construed against the taxpayer. A taxpayer . . . has the burden of establishing his or her entitlement to such credit or exemption" (Matter of We Care Transp. v Tax Appeals Trib. of State of N.Y., 298 AD2d 717, 719 [3d Dept 2002] [citations omitted]; see Matter of Suozzi v Tax Appeals Trib. of the State of N.Y., 179 AD3d 1253, 1255 [3d Dept 2020]; Matter of Golub Serv. Sta. v Tax Appeals Trib. of State of [*2]N.Y., 181 AD2d 216, 219 [3d Dept 1992]). Ultimately, so long as there are facts or reasonable inferences to be drawn from the record to sustain the Tribunal's determination, it must be upheld, even if a different conclusion would not have been unreasonable (see Matter of Wegmans Food Mkts., Inc. v Tax Appeals Trib. of the State of N.Y., 33 NY3d 587, 594 [2019]; Matter of CLM Assoc., LLC v New York State Tax Appeals Trib., 181 AD3d 999, 1001 [3d Dept 2020], lv denied 36 NY3d 904 [2021]; Matter of XO N.Y., Inc. v Commissioner of Taxation & Fin., 51 AD3d 1154, 1154 [3d Dept 2008]).
New York imposes prepaid sales taxes, excise taxes and business taxes on each gallon of motor fuel that a distributor imports into the State for use, distribution, storage or sale (see Tax Law §§ 1102 [a]; 284; 301-a). Tax Law § 285-a (2) provides for a presumption that all motor fuel imported, manufactured, sold, received or possessed in New York is subject to these taxes "until the contrary is established" (see also 20 NYCRR 412.1 [a] [1]). The Legislature amended the relevant statutes in 1985 to impose these taxes on the initial importer of motor fuel in order to deter rampant tax evasion by fuel importers, which had cost the State an annual loss of $90 million (see L 1985, ch 44, § 3; Matter of New York State Dept. of Taxation & Fin. v Bramhall, 235 AD2d 75 [4th Dept 1997], appeal dismissed 91 NY2d 849 [1997]). Thus, a distributor-seller that imports motor fuel into New York is required to give the purchaser of that fuel a certification that it (the distributor-seller) paid, or assumed responsibility to pay, the taxes imposed and is passing them through to the purchaser as part of the purchase price (see Tax Law § 285-a [3]). The purchaser (often another distributor) may then claim a "tax paid" credit for such prepaid taxes on its returns (see Tax Law § 287 [1]), so that the taxes are not imposed more than once (see Tax Law § 289-a; see also 20 NYCRR 412.1 [a] [3]).
At the hearing, in lieu of witness testimony, petitioner relied entirely on the affidavit of Gregory Anderson, who had over 26 years of experience with the filing of motor fuel excise tax returns. In his affidavit, Anderson stated he was familiar with the monthly tax return forms CITGO used to report taxes under Tax Law §§ 12-a and 13-a because he was the custodian of those records during the months at issue. Anderson claimed knowledge and experience with the methods utilized by CITGO to electronically store the information used to prepare its PT-100 forms and accompanying schedules. Anderson stated that he had, at petitioner's request, extracted from CITGO's records what he asserted was a true and accurate representation of the information CITGO had used to prepare its returns during CITGO's own refund audit period, which ran from September 2011 through November 30, 2013. He averred that, using this information, he created a "workbook" that accurately matched CITGO's electronically stored information.
Anderson [*3]explained that he had prepared spreadsheets that purported to show CITGO's motor fuel receipts and its tax credits claimed for February 2011 through March 2012. These spreadsheets assigned a "control" number to each receipt and detailed the vendor, gallons received, the specific monthly Form PT-101 on which the gallons were reported as received and the month a credit, if any, was claimed on such receipt. Anderson concluded that his workbook demonstrated that CITGO properly reported on the PT-101 forms its receipt of approximately 13.8 million ethanol exchange gallons from petitioner. Since there was no accompanying entry in a column entitled "Period TaxPaid Receipt was Reported," Anderson concluded that CITGO never claimed a tax paid credit on the ethanol exchange gallons, thus demonstrating that CITGO paid the taxes due on those gallons.
Anderson criticized the Department's conclusion to the contrary. In his view, the Department did not account for timing differences between petitioner's and CITGO's reporting of the sale and receipt of the ethanol exchange gallons. With respect to the timing of CITGO's reporting of sales, Anderson stated that "[i]t is not unusual for CITGO to receive motor fuel in one month and pay for that fuel (with all charged taxes) in a subsequent month due to the natural timing of when invoices are received and subsequently paid." Since it "deferred claiming the Tax Paid Credit until the taxes on a receipt of motor fuel were actually paid to its supplier . . . , CITGO routinely claimed Tax Paid Credits for receipts of motor fuel that were reported in a prior month."
Additionally, according to Anderson, the Department overlooked numerous errors on CITGO's returns, which included its erroneous reporting of credits for diesel fuel receipts on schedule PT-101, which was meant for motor fuel only. Although CITGO corrected some of the errors, Anderson counted a total of 2,958,417 gallons where CITGO had claimed a credit for payment to a supplier on motor fuel instead of ondiesel fuel. Accordingly, Anderson opined, the credits claimed on the motor fuel schedules were overstated and the credits claimed on the diesel fuel motor schedules were understated, but the "net tax impact of these reporting errors was negligible." After considering all of this and making various adjustments and calculations, Anderson concluded that "the CITGO Returns and the electronic records maintained by CITGO establish and confirm that CITGO paid the taxes due to the State of New York on the Ethanol Exchange Gallons."
In opposition, the Department's auditor, Moheb Gerguis, testified that after petitioner filed a request for a refund, the Department determined it was unsupported because petitioner had failed to demonstrate that the same fuel had been taxed twice. Gerguis conceded that, because he did not audit CITGO, it was not possible for him to state with certainty whether the gallons of motor fuel at issue here had been taxed twice — once by petitioner [*4]after the audit and once by CITGO upon receiving the fuel in the exchange transaction. Nonetheless, Gerguis explained that as a courtesy to petitioner, he had performed a "mathematical review" comparing CITGO's PT-101 forms and petitioner's amended returns between January 2011 and April 2012. Based on this review, he noted several significant inconsistencies between the gallons reported on these two sets of documents.
First, Gerguis noted that for the period in question, petitioner claimed to have sold CITGO 175,879,397 gallons of motor fuel total, but that according to CITGO's returns, it had purchased 177,371,786 gallons of motor fuel from petitioner. Accordingly, there was a 1,492,389-gallon discrepancy between the two figures. Second, Gerguis' analysis revealed that CITGO claimed that it received 177,980,729 gallons from petitioner on which CITGO paid the tax to petitioner. Gerguis explained that this discrepancy (177,371,786 total purchased versus 177,980,729 on which tax paid) resulted in CITGO claiming to have paid petitioner for tax on 608,943 more gallons than it even claimed to have purchased from petitioner for the same period. Third, Gerguis testified that petitioner's assertion that CITGO paid the tax on the 13.8 million ethanol exchange gallons was further undermined by looking at CITGO's PT-101 schedule, which detailed the total amount of motor fuel CITGO purchased in New York from all vendors during the refund audit period. He explained that of these gallons, the amount where taxes were paid to CITGO's supplier as part of the purchase price, and thus where CITGO claimed a tax paid credit, totaled 196,050,048. However, the remaining gallons on which CITGO did not claim a tax paid credit, but paid the tax to the Division directly, totaled only 241,222 — again, for all vendors during the audit period. This suggested to him that CITGO did not pay taxes on the 13.8 million gallons at issue.
In sum, Gerguis concluded that these discrepancies called into question Anderson's theory that he could link the 13.8-million-gallon ethanol exchange between petitioner and CITGO to taxes reportedly paid by CITGO on those gallons because the "[g]allons don't add up." Accordingly, Gerguis adhered to his opinion that "[p]etitioner failed to pass through the taxes to CITGO."
Considering the foregoing, we conclude that the Tribunal rationally determined upon substantial evidence that petitioner had failed to meet its burden of showing clearcut entitlement to relief (see Matter of American Food & Vending Corp. v New York State Tax Appeals Trib., 144 AD3d 1227, 1228 [3d Dept 2016]; Matter of Golub Serv. Sta. v Tax Appeals Trib. of N.Y., 181 AD2d at 219). Simply stated, given the conflict between the evidence offered through Anderson's affidavit and Gergius's testimony, there was an ample basis for the Tribunal to conclude that petitioner failed to establish a clearcut entitlement to a refund. Moreover, petitioner failed to establish a basis for Anderson's [*5]claimed certainty that CITGO had paid the tax, especially in light of Anderson's statement that CITGO would sometimes claim tax paid credits months after fuel had been received. Finally, to the extent that petitioner's claim to a refund rested on alleged problems in the audit analysis performed by Gergius — an assertion made in the Anderson affidavit — petitioner was obligated to establish by clear and convincing evidence that the audit method was erroneous (see Matter of Zuckerman v Tax Appeals Trib. of the State of N.Y., 174 AD3d at 1075). Petitioner's only evidence to that effect was, again, the Anderson affidavit, which, even if providing some evidence of potential errors, failed to establish that those potential errors were errors in fact. Simply put, the Anderson affidavit does not clearly establish petitioner's entitlement to a refund (see Matter of Zuckerman v Tax Appeals Trib. of the State of N.Y., 174 AD3d at 1075; Matter of We Care Transp. v Tax Appeals Trib. of State of N.Y., 298 AD2d at 719; Matter of Golub Serv. Sta. v Tax Appeals Trib. of State of N.Y., 181 AD2d at 219).
Finally, as correctly observed by the Tribunal, petitioner's predicament is largely of its own making because it "should have paid the taxes due on the ethanol exchange gallons upon their importation into New York, as required by Tax Law § 285-a (2) and certified such payment or assumption of taxes through a certification pursuant to Tax Law § 285-a (3) upon their transfer to CITGO. However, it did not do so."
We find that the record supports the Tribunal's determination.
Clark, J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.