992 F.2d 1073
 Sonny BUZZARD; Gary Forrest; Dan Hayes; Dayton Holt;
Austin Ketcher; Roger Limore; Norman Littledave; Bobby
Mayfield; Dianna Mayfield; Adalene Smith; Roberta Smoke;
Carol Stacy; Peggy Stepp; Mary Stiglets; Tabbie Hess;
United Keetoowah Smokeshop Association, Unincorporated
Indian Organization; J.L. Barnett, Smokeshop Managers and
Licensees, Plaintiffs,
and
The United Keetoowah Band of Cherokee Indians, of Oklahoma,
a Federally Recognized Indian Band, Plaintiff-Appellant,
v.
The OKLAHOMA TAX COMMISSION; Robert Anderson, Chairman of
the Tax Commission; Robert L. Wadley, Vice-Chairman of the
Tax Commission; Don Kilpatrick, Secretary of the Tax
Commission; Jon D. Douthitt, District Attorney for
Delaware County, Oklahoma; Jim Earp, Sheriff for Delaware
County, Oklahoma; Gerald Hunter, District Attorney for
Adair, Cherokee, Wagoner & Sequoyah County, Oklahoma; W.A.
Drew Edmondson, District Attorney for Muskogee County,
Oklahoma; Patrick R. Abitbol, District Attorney for Rogers,
Mayes & Craig Counties, Oklahoma, and their successors in
office, Defendants-Appellees,
The Cherokee Nation and Keetoowah Society, Amicus Curiae.
 No. 92-5070.
 United States Court of Appeals,
Tenth Circuit.
 April 28, 1993.
 
 Martin E. Seneca, Jr., Reston, VA, for appellant.
 David Allen Miley, Oklahoma Tax Com'n, Oklahoma City, OK, and Sue Wycoff, Asst. Atty. Gen., Oklahoma City, OK, (Susan B. Loving, Atty. Gen. of Oklahoma, and David Hudson, Oklahoma Tax Com'n with them on the briefs), for appellee.
 James G. Wilcoxen, Wilcoxen, Wilcoxen & Primomo, Muskogee, OK, filed amicus curiae brief, for The Cherokee Nation.
 Chadwick Smith, Tulsa, OK, filed amicus curiae brief, for Keetoowah Soc.
 Before MOORE, Circuit Judge, GODBOLD, Senior Circuit Judge,* and ANDERSON, Circuit Judge.
 GODBOLD, Senior Circuit Judge:
 
 
 1
 The United Keetoowah Band of Cherokee Indians in Oklahoma (UKB) purchased land subject to a restriction against alienation requiring the approval of the U.S. Secretary of the Interior. This case presents the issue whether the land can be considered Indian country and therefore exempt from state jurisdiction. The UKB, contending that land purchased by it subject to this restriction was Indian country, sought injunctive relief prohibiting Oklahoma[1] from enforcing state tobacco taxing statutes against the UKB's smokeshops.[2] The district court held that the restriction against alienation by itself was insufficient to make the UKB's land Indian country and granted summary judgment to Oklahoma. We agree and affirm the grant of summary judgment.
 
 I. FACTUAL BACKGROUND
 
 2
 The UKB is an Indian tribe organized pursuant to the Oklahoma Indian Welfare Act, § 3, 25 U.S.C. § 503 (1988). It intervened in the action for declaratory relief brought by the United Keetoowah Smokeshop Association, Sonny Buzzard, and other individuals. The district court granted Oklahoma's motion to dismiss as to all plaintiffs except the UKB, and it is the only appellant.
 
 
 3
 The UKB's tribal charter permits it to purchase land in fee simple but prohibits the UKB from disposing of land without the approval of the Secretary of the Interior. The UKB operates smokeshops on land purchased by it subject to this restriction. It contended in the district court that cigarette sales made in these smokeshops should not be subject to Oklahoma's state tobacco taxes[3] because the shops were located in Indian country. The UKB asserted that its land should be considered Indian country because both its tribal charter and 25 U.S.C. § 177[4] require it to obtain the approval of the federal government prior to disposing of the land.[5] It reasoned that this requirement amounted to sufficient involvement by the federal government to make UKB land " 'validly set apart for the use of the Indians as such, under the superintendency of the Government.' " Oklahoma Tax Comm'n v. Potawatomi Indian Tribe, 498 U.S. 505, 511, 111 S.Ct. 905, 910, 112 L.Ed.2d 1112 (1991) (quoting U.S. v. John, 437 U.S. 634, 649, 98 S.Ct. 2541, 2549, 57 L.Ed.2d 489 (1978)).
 
 
 4
 The district court held that, regardless of the source of the restraint against alienation, the requirement that the UKB obtain the approval of the federal government prior to disposing its land did not mean that the federal government had set aside the land for the UKB or agreed to serve as superintendent of the land. It therefore concluded that the UKB's land was not Indian country, and the UKB was not entitled to injunctive relief prohibiting Oklahoma from enforcing its tobacco taxes.
 
 II. STANDARD OF REVIEW
 
 5
 A district court's grant of summary judgment is reviewed de novo. Housing Authority v. U.S., 980 F.2d 624, 628 (10th Cir.1992).III. DISCUSSION
 
 
 6
 For purposes of both civil and criminal jurisdiction, the primary definition of Indian country is 18 U.S.C. § 1151. See Indian Country, U.S.A., Inc. v. Oklahoma Tax Comm'n, 829 F.2d 967, 973 (10th Cir.1987), cert. denied, 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 906 (1988). Section 1151 defines Indian country to include: (1) land within the limits of any Indian reservation, 18 U.S.C. § 1151(a); (2) dependent Indian communities, id. § 1151(b); and (3) Indian allotments, the Indian titles to which have not been extinguished, id. § 1151(c). In addition the Supreme Court has held that Indian country includes land " 'validly set apart for the use of the Indians as such, under the superintendency of the Government.' " Potawatomi Indian Tribe, 498 U.S. at 511, 111 S.Ct. at 910 (quoting John, 437 U.S. at 649, 98 S.Ct. at 2549). Applying this test, the Court has concluded that Indian country includes land designated as an "Indian colony," U.S. v. McGowan, 302 U.S. 535, 539, 58 S.Ct. 286, 288, 82 L.Ed. 410 (1938), and land held in trust by the United States for the use of an Indian tribe, Potawatomi Indian Tribe, 498 U.S. at 511, 111 S.Ct. at 910.
 
 
 7
 In McGowan the Supreme Court held that the Reno Indian Colony had been set apart by the government for the use of Indians because it had been purchased by the United States for the purpose of providing lands for needy Indians. See 302 U.S. at 537, 58 S.Ct. at 287. Similarly, trust land is set apart for the use of Indians by the federal government because it can be obtained only by filing a request with the Secretary of the Interior, 25 C.F.R. § 151.9 (1992), who must consider, among other things, the Indian's need for the land, id. § 151.10(b), and the purposes for which the land will be used, id. § 151.10(c). If the request is approved, the United States holds the land as trustee. Id. § 151.2(d). Thus, land is "validly set apart for the use of Indians as such" only if the federal government takes some action indicating that the land is designated for use by Indians.
 
 
 8
 Superintendency over the land requires the active involvement of the federal government. This involvement was shown in McGowan by the federal government's retention of title to the land and its regulation of activities in the Colony. 302 U.S. at 538-39, 58 S.Ct. at 287-88. The United States also holds title to trust land, although only as trustee. In addition, before agreeing to acquire trust land, the Secretary must consider several factors including the authority for the transactions, id. § 151.10(a), the impact on the state resulting from the removal of the land from the tax rolls, id. § 151.10(3), and jurisdictional problems that might arise, id. § 151.10(f). These requirements show that, when the federal government agrees to hold land in trust, it is prepared to exert jurisdiction over the land.
 
 
 9
 The UKB has not shown that its smokeshops are located on land validly set apart for the UKB's use by the federal government. Although it must obtain the Secretary of the Interior's approval before disposing of land, the UKB has the right to acquire land unilaterally. The smokeshops thus were located on land purchased by the UKB in the same manner land purchased by any other property owner. In contrast to the Reno Indian Colony or trust land, title is held by the UKB in fee simple. No action has been taken by the federal government indicating that it set aside the land for use by the UKB. A restriction against alienation requiring government approval may show a desire to protect the UKB from unfair dispositions of its land, see Federal Power Comm'n v. Tuscarora Indian Nation, 362 U.S. 99, 119, 80 S.Ct. 543, 555, 4 L.Ed.2d 584 (1960), but does not of itself indicate that the federal government intended the land to be set aside for the UKB's use.
 
 
 10
 Nor has the UKB shown that its smokeshops are located on land superintended by the federal government. The federal government has not retained title to this land or indicated that it is prepared to exert jurisdiction over the land. At most it has agreed to approve transactions disposing the land. But the ability to veto a sale does not require the sort of active involvement that can be described as superintendence of the land. Because the UKB cannot show that its lands were validly set apart for its use under the superintendence of the government, we hold that the UKB's smokeshops are not located in Indian country.
 
 
 11
 Consideration of the consequences of determining that land is Indian country supports this conclusion. Within Indian country the federal and tribal governments have exclusive jurisdiction over the conduct of Indians and interests in Indian property. Indian Country, U.S.A., 829 F.2d at 973. This limits a state's criminal jurisdiction over activities that occur in Indian country and involve Indians, see 18 U.S.C. §§ 1152-1153, and its authority to tax those activities, see Indian Country, 829 F.2d at 983-87. If the restriction against alienation were sufficient to make any land purchased by the UKB Indian country, the UKB could remove land from state jurisdiction and force the federal government to exert jurisdiction over that land without either sovereign having any voice in the matter. Nothing in McGowan or the cases concerning trust land indicates that the Supreme Court intended for Indian tribes to have such unilateral power to create Indian country.
 
 
 12
 Our conclusion that a restraint against alienation requiring the approval of the Secretary of the Interior is insufficient by itself to make land purchased by the UKB Indian country does not depend on the source of that restraint. It is agreed that the UKB's tribal charter prohibits the disposition of UKB land without the Secretary's approval. But the parties dispute whether 25 U.S.C. § 177 also requires the UKB to obtain the Secretary's approval.[6] It is not necessary to resolve this dispute. Whether the restraint against alienation stems from the UKB's tribal charter or 25 U.S.C. § 177, it is insufficient by itself to establish that land purchased by the UKB has been set apart for the UKB's use under the superintendence of the government.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The Honorable John C. Godbold, Senior U.S. Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 [1]
 The appellees consist of the Oklahoma Tax Commission, several of its officers, and several Oklahoma district attorneys. This opinion refers to them collectively as "Oklahoma."
 
 
 [2]
 Smokeshops are retail establishments that sell a variety of tobacco-related products, including cigarettes. See, e.g., Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 144-45, 100 S.Ct. 2069, 2076-77, 65 L.Ed.2d 10 (1980)
 
 
 [3]
 Even if land purchased by the UKB were Indian country, however, Oklahoma could require the UKB to collect taxes on cigarette sales to nontribal members. Oklahoma Tax Comm'n v. Potawatomi Indian Tribe, 498 U.S. 505, 512, 111 S.Ct. 905, 911, 112 L.Ed.2d 1112 (1991)
 
 
 [4]
 That section provides:
 No purchase, grant, lease, or other conveyance of lands ... from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution. Every person who, not being employed under the authority of the United States, attempts ... to treat with any such nation or tribe of Indians for the title or purchase of any lands by them held or claimed, is liable to a penalty of $1,000.
 25 U.S.C. § 177 (1988).
 
 
 [5]
 The UKB also asserted that its smokeshops were in Indian country because the land was part of the old Cherokee Indian Reservation and it is an heir to the Cherokee Nation. The district court held, however, that the UKB is not an heir to the Cherokee Nation and the UKB has not challenged this ruling
 
 
 [6]
 The UKB contends that, in addition to it tribal charter, 25 U.S.C. § 177 requires it to obtain the federal government's approval before it can dispose of its land. Because Congress has expressly stated that tribes organized pursuant to the Oklahoma Indian Welfare Act are permitted to buy and sell real property, see 25 U.S.C. § 503 (incorporating 25 U.S.C. § 477), Oklahoma asserts that the UKB's organization pursuant to that Act constitutes the approval required by 25 U.S.C. § 177. Oklahoma therefore contends that only the UKB's tribal charter requires it to obtain the federal government's approval prior to disposing of land