**MUSCOGEE (CREEK) NATION,**
**a federally-recognized Tribe,**
**Plaintiff,**

v.

**Brad HENRY, Governor of the State of Oklahoma; W.A. "Drew" Edmondson, Attorney General of the State of Oklahoma; The Oklahoma Tax Commission; Thomas Kemp, Jr. Chairman of the Tax Commission; Jerry Johnson, Vice–Chairman of the Tax Commission, and Constance Irby, Secretary of the Tax Commission, Defendants.**

**Case No. CIV–10–019–JHP.**

United States District Court,
E.D. Oklahoma.

Dec. 30, 2010.

Conly J. Schulte, Joseph V. Messineo, Fredericks Peebles & Morgan, Omaha, NE, A. Robert Rhoan, Fredericks Peebles & Morgan, Sacramento, CA, Gregory D. Nellis, Michael A. Simpson, Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, Tulsa, OK, Roger F. Wiley, Muscogee (Creek) Nation, Okmulgee, OK, for Plaintiff.

Edward Clyde Kirk, Office of the Attorney General, Larry D. Patton, Oklahoma Tax Commission–Legal, Oklahoma City, OK, Leisa Gebetsberger, Oklahoma Tax Commission, Tulsa, OK, for Defendants.

## *ORDER*

JAMES H. PAYNE, District Judge.

Now before the Court is the Motion to Dismiss filed on behalf of the Oklahoma Tax Commission and its members [Doc. 35], and the Motion to Dismiss filed on behalf of Attorney General Edmondson [Doc. 36]. The instant case, commenced by the Muscogee (Creek) Nation, a federally-recognized Indian Tribe ("the Nation"), concerns the Nation's sale of cigarettes and tobacco products. The Nation challenges Oklahoma Tax Statutes which impose an excise tax on all **non-tribal member consumers** who purchase cigarettes and tobacco products from retailers located on the Tribe's Indian Country, and

which provide for **tax-free sales to members of the Nation.**

The Nation also challenges two related statutes. Okla.Stat.tit. 37, §§ 600.1 through 600.23 is an escrow statute which requires third party cigarette manufacturers who have not joined the Master Settlement Agreement with the State to make escrow payments.[1] The amount of the escrow payments are based upon the sales of cigarettes and tobacco products and are used to compensate the State for the financial burden caused by the use of cigarettes and tobacco products. The escrow requirement is not imposed upon tobacco retailers, rather, it is imposed only upon cigarette manufacturers. Therefore, the escrow requirement is not imposed upon the Nation or its retailers. More importantly, the escrow requirements imposed by the challenged statutes apply only to sales of tobacco products that are taxed. Thus, the Escrow Statute is not applicable to non-taxed sales to the Nation's members.

The Nation also challenges a companion statute, the "Oklahoma Tobacco Master Settlement Agreement Complementary Act," Okla. Stat.tit. 68, §§ 360.1 through 360.9, which was enacted to aid in the enforcement of the Escrow Statute. Because this Complementary Act is designed to aid in the enforcement of the Escrow Statute, and because the Escrow Statute does not apply to sales to the Nation's members, the Complementary Act is also not applicable to non-taxed sales to the Nation's members.

The Nation seeks declaratory and injunctive relief against the Defendants: Brad Henry, Governor of the State of Oklahoma[2]; W.A. "Drew" Edmondson, Attorney General of the State of Oklahoma; The Oklahoma Tax Commission, and its members, Thomas Kemp, Jr., Chairman of the Commission, Jerry Johnson, Vice–Chairman of the Commission, and Constance Irby, the Commission's Secretary.

The Nation concedes it is not cooperating with the State by collecting and remitting state tax due on the sale of cigarettes and tobacco products sold to non-members on the Nation's alleged Indian Country.[3] Rather, the Nation claims under various theories that sales of tobacco products in its Indian Country are exempt from Oklahoma's cigarette excise tax of $1.03 per pack of twenty (20) cigarettes.[4] This gives the Nation's retailers a price advantage of as much as $10.30 per carton over other Native American and non-Native American retailers. The Nation also claims that sales of cigarettes in its Indian Country are exempt from the manufacturers escrow payment which results in an additional price advantage over other Native American and non-Native American retailers of $5.49 per carton, a total of as much

1. Under the Master Settlement Agreement, tobacco manufacturers who have joined the Agreement are obligated to pay substantial sums to the State. The amount of money paid is determined in part by the volume of sales. The tobacco manufacturers are granted a release of past, present and certain future claims against them in return for these payments. The sums fund a national foundation devoted to public health and the reduction of underage smoking. The State is required to make substantial changes in advertising, marketing practices and corporate structure.

2. The Plaintiffs voluntarily dismissed Governor Brad Henry on August 4, 2010 (Dkt. # 124).

3. The issue of whether the various smokeshops are indeed located on Indian Country has not been established. Although a critical issue, such a finding is unnecessary in light of the ultimate disposition of the instant motion.

4. *See* Okla.Stat.tit. 68, §§ 302 through 302–5.

as $15.79 per carton—all on sales to non-tribal members.[5]

***Legal Background***

In considering the Nation's challenge to the State cigarette tax statutes and the escrow and escrow enforcement statute, this Court is not writing on a blank slate; United States Supreme Court precedent is both controlling and consistent. The Nation and the State must comply with federal mandates and federal law, which, in part, define their relationship.

In defining this relationship, the United States Supreme Court in *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), rejected the broad assertion that the Federal Government has exclusive jurisdiction over Tribes:

> At the outset, we reject—as did the state court—the broad assertion that the Federal Government has exclusive jurisdiction over the Tribe for all purposes and that the State is therefore prohibited from enforcing its revenue laws against any tribal enterprise '(w)hether the enterprise is located on or off tribal land.'

*Id.* at 147–148.

The *Mescalero* Court discussed the application of State law on a reservation:

> The upshot has been the repeated statements of this Court to the effect that, **even on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law.**

*Id.* at 148 (emphasis added). Additionally and significantly, the *Mescalero* Court held that, "Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state laws." *Id.* at 145–49.

With respect to the application of state tax on cigarette sales within Indian Country, the United States Supreme Court has been specific. First, in *Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), the Supreme Court held a State's requirement that a tribal seller of cigarettes must collect a tax validly imposed on non-Indians was a minimal burden designed to avoid the likelihood that in its absence, non-Indians purchasing from the tribal seller would avoid payment of the state taxes.

Later, in *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), the United States Supreme Court was faced with the State's assertion that it had the power to apply its sales and cigarette tax to Indian residents on the reservation who were not enrolled in the governing tribe. Reaffirming its decision in *Moe,* the Supreme Court concluded that the imposition of Washington's tax on Indian consumers who were not members of the governing tribe did not contravene "the principle of self-government, for the simple reason that non-members are not constituents of the governing Tribe. For most practical purposes those Indians stand on the same footing as non-Indian residents on the reservation ... We find therefore, that the State's interest in taxing these purchases outweighs any tribal interest that may exist in preventing the State from imposing its tax." *Id.* at 161, 100 S.Ct. 2069.

The United States Supreme Court rejected the Tribes' exemption claims, holding:

> **We do not believe that principles of federal Indian law, whether stated in terms of pre-emption, tribal self-gov-**

5. See Okla. Stat. tit. 37, § 600.23.

**ernment, or otherwise,** authorize Indian tribes thus to **market an exemption from state taxation to persons who would normally do their business elsewhere.**

*Id.* at 155, 100 S.Ct. 2069 (emphasis added).

The Court came to this conclusion even though it found imposition of the State tax would result in the Tribal smokeshops losing "a large percentage of their cigarette sales and the Tribe [would] forfeit substantial revenues." *Id.* at 154, 100 S.Ct. 2069.

The *Colville* Court concluded the imposition of Washington State's sales and cigarettes taxes was not preempted by federal statutes, including the Indian Reorganization Act, the Indian Financing Act, the Indian Self–Determination and Education Act, and the Indian Trader Act, even when giving those statutes "the broadest reading to which they are fairly susceptible...." *Id.*

The *Colville* Court also held the record keeping requirements imposed by the State upon tribal retailers and wholesalers were valid *in toto.* *Id.* at 160. Finally, the *Colville* Court approved the State's power to seize unstamped cigarettes as contraband if the Tribes did not cooperate in the collection of State taxes:

> We find that **Washington's interest in enforcing its valid taxes is sufficient to justify these seizures. Although the cigarettes in transit are as yet exempt from state taxation, they are not immune from seizure when the Tribes, as here, have refused to fulfill collection and remittance obligations which the State has validly imposed.** It is significant that these seizures take place outside the reservation, in locations where state power over Indian affairs is considerably more expansive than it is within reservation boundaries.

*Id.* at 161–62, 100 S.Ct. 2069 (emphasis added).

In *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), the United States Supreme Court reaffirmed its holdings in *Moe* and *Colville.*

In *Department of Taxation and Finance of New York v. Milhelm Attea & Bros., Inc.,* 512 U.S. 61, 114 S.Ct. 2028, 129 L.Ed.2d 52 (1994) the Supreme Court upheld State regulations regarding the sale of cigarettes and tobacco products on Indian land that were challenged as being preempted by provisions of the Indian Trader Statute. New York's regulations, similar to the tax statutes challenged in the instant case, contained provisions to ensure non-exempt purchases were restricted to tribal members and all other sales taxed. In order to accomplish this goal, the New York regulations, like the challenged Oklahoma statute, contained a mechanism for calculating a "probable demand" limit on the quantity of un-taxed cigarettes that wholesalers could sell to tribes and tribal retailers.

Also, consistent with Oklahoma's statute, the New York regulations required wholesale distributors of tax-exempt cigarettes to hold State licenses authorizing them to purchase and affix the New York cigarette tax stamp and collect taxes on non-exempt sales. *Id.* at 67, 114 S.Ct. 2028.

In upholding New York's regulatory regimen against the Indian Trader Statute preemption argument, the United States Supreme Court again revisited its long line of consistent holdings in *Moe, Colville,* and *Potawatomi,* then spoke of the State tax obligation New York's regulations were designed to enforce:

> The **specific kind of state tax obligation that New York's regulations are designed to enforce-which falls on non—Indian purchasers of goods that are merely retailed on a reservation—**

> **stands on a markedly different footing from a tax imposed directly on Indian traders,** or **enrolled tribal members** or **tribal organizations,** or on "value generated on the reservation by activities involving the Tribes," *Colville,* 447 U.S., at 156–157, 100 S.Ct., at 2083. *Moe, Colville* and *Potawatomi* make clear that the **States have a valid interest in ensuring compliance with lawful taxes that might easily be evaded through purchases of tax-exempt cigarettes on reservations; that interest outweighs tribes' modest interest in offering a tax exemption to customers who would ordinarily shop elsewhere.**

*Milhelm,* 512 U.S. 61 at 73, 114 S.Ct. 2028 (emphasis added).

The *Milhelm* Court then concluded that in this area the State's interests leave "more room for state regulation than other areas," noting that in *Moe, Colville,* and *Potawatomi* the Court "decided that States may impose on reservation retailers minimal burdens reasonably tailored to the collection of valid taxes from non-Indians." *Id.*

The imposition of like burdens on Indian Traders were then considered and upheld:

> **It would be anomalous to hold that a State could impose tax collection and bookkeeping burdens on reservation retailers who are themselves enrolled tribal members,** including stores operated by the tribes themselves, **but that similar burdens could not be imposed on wholesalers,** who often (as in this case) are not. **Such a ruling might well have the perverse consequence of casting greater state tax enforcement burdens on the very reservation Indians whom the Indian Trader Statutes were enacted to protect.** Just as tribal sovereignty does not completely preclude States from enlisting tribal retailers to assist in enforcement of valid state taxes, the Indian Trader Statutes do not bar the States from imposing reasonable regulatory burdens upon Indian traders for the same purpose. **A regulation designed to prevent non-Indians from evading taxes may well burden Indian traders in the sense that it reduces the competitive advantage offered by trading unlimited quantities of tax-free goods; but that consideration is no more weighty in the case of Indian traders** engaged in wholesale transactions **than it was in the case of reservation retailers.**

*Milhelm,* 512 U.S. 61 at 74, 114 S.Ct. 2028 (emphasis added).

The Court concluded that the limitation on the number of tax-free exempt cigarettes made available to wholesalers through the "probable demand" mechanism, was a necessary limitation which prevented fraudulent transactions. Further, the Court found the mechanism polices against wholesale evasion of valid taxes without unnecessarily intruding on core tribal interests.

It is against this backdrop of United States Supreme Court precedent the Court addresses the viability of the Nation's claims.

### *Analysis*

When ruling upon a Motion to Dismiss, the Court is not required to accept, as true, legal conclusions couched as factual allegations. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Only well-pled facts, as distinguished from conclusory allegations, must be taken as true. *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir.2002). A complaint must contain sufficient allegations of fact to state a claim for relief that is plausible upon its face, and the mere metaphysical possibility of proof of some set of facts to support claims pled is insufficient. The plaintiff's burden is to show that they have a reasonable likelihood of mustering

factual support for their claims. Complaints which consist of no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," "will not do." *Robbins, et al. v. State of Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), citing and relying upon *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *Twombly* expounded the pleadings standard in all civil actions in United States District Courts. *Ashcroft, et al. v. Iqbal, et al.,* 556 U.S. 662, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868 (2009).

**Claims asserted against the Oklahoma Tax Commission.**

The Oklahoma Tax Commission, an agency of the State of Oklahoma, claims both sovereign and 11th Amendment immunity from Plaintiff's suit. Unless the State has waived its 11th Amendment immunity or Congress has overridden it, the State cannot be sued directly in its own name, regardless of the relief sought. *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The 11th Amendment does not define the scope of sovereign immunity, it is a particular exemplification of that immunity. *Federal Maritime Commission v. South Carolina State Ports Authority,* 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002), citing *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991).

A State may lose its immunity by either waiving it, or by Congressional abrogation. *Ruiz v. McDonnell,* 299 F.3d 1173, 1180–1181 (10th Cir.2002), citing *Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). In this case, the State has not expressly waived its 11th Amendment immunity. Okla. Stat. tit. 51, § 152.1(B); *Ramirez v. Oklahoma Department of Mental Health,* 41 F.3d 584, 588–589 (10th Cir.1994), overruled on other grounds.

Plaintiff claims 28 U.S.C. § 1362 represents a Congressional abrogation of States' 11th amendment immunity in cases involving injunctive relief sought against state taxation. However, jurisdiction under 28 U.S.C. § 1362 is only allowed for injunctive relief against state taxation occurring on Indian Country. *Sac and Fox Nation, etc. v. Pierce,* 213 F.3d 566, 572 (10th Cir.2000). Here, no tax is being imposed upon transactions with Tribal members on the Tribe's Indian country; in fact, Plaintiff's tribal members are entitled to purchase cigarettes and other tobacco products free from payment of Oklahoma excise taxes. Okla. Stat. tit. 68, § 349.1.B.

Further, 28 U.S.C. § 1362 does not afford a basis for jurisdiction over the Oklahoma Tax Commission. This Court lacks subject matter jurisdiction because of the 11th Amendment and sovereign immunity which the Oklahoma Tax Commission enjoys as a State agency. *Muscogee (Creek) Nation v. Oklahoma Tax Commission, et al.,* 611 F.3d 1222, 1227 (10th Cir.2010), citing *Puerto Rico Aqueduct, etc. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

**Claims asserted against the Commissioners of the Oklahoma Tax Commission and the Attorney General.**

The judicially-created *Ex Parte Young* exception to 11th Amendment immunity applies to suits against officials of the state sued in their official capacity. The exception is applicable only when prospective relief is sought to enjoin alleged continuing violations of federal law. *Verizon Maryland, Inc. v. Public Service Commission of Maryland, et al.,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). If no violation of federal law is demonstrated, the *Ex Parte Young* exception does not apply. *Yakama Indian Nation v. State of Washington Department of Revenue,* 176 F.3d 1241, 1248 (9th Cir.

1999). Therefore, in order to determine whether there is subject matter jurisdiction over the Commissioners of the Oklahoma Tax Commission and the Attorney General, it is necessary to determine whether the Complaint sets forth at least one plausible claim of a violation of federal law. If not, the *Ex Parte Young* exception does not apply, and claims against the Commissioners of the Oklahoma Tax Commission and the Attorney General must be dismissed for lack of subject matter jurisdiction.

**First Claim for Relief: Alleged deprivation of due process.** Plaintiff's First Claim seeks relief for a violation of due process described as: "Declaratory Judgment that it is Unlawful for the Defendants to regulate Indian-to-Indian Sales in the Sale of Native Manufactured Cigarettes within Indian Country" (Complaint, Dkt. # 2, p. 23).

It is alleged that "... adopted changes to the Tax Code deny the Nation due process of law ...", but there is no specification of how, or in what regard due process rights are violated. Although styled a "due process" claim, the substance of the claim is that the State Tax Code "... infringe[s] on the Nation's federally protected rights [sic] of self-governance ..." There is also a reference to the "... Nation's federally protected right to promote economic development within the Indian country of the Nation" (which is a subject of the Third Claim for Relief) and treaty rights.

As noted in the introduction, Supreme Court precedent holds that Oklahoma may tax all cigarette sales within Plaintiff's Indian country, except sales to Plaintiff's tribal members. If tribal members are not taxed, tribal self-government is not burdened or frustrated and the tax does not run afoul of Congressional enactments dealing with the affairs of reservation Indians. *Moe v. Confederated Salish, etc.*, 425 U.S. at 481–483, 96 S.Ct. 1634; *Washington, et al. v. Confederated Tribes, Colville Indian Reservation,* 447 U.S. at 150–151, 154–161, 100 S.Ct. 2069; *Oklahoma Tax Commission v. Citizen Band Potawatomi, etc.*, 498 U.S. at 512–514, 111 S.Ct. 905. The Tenth Circuit recognizes this as settled law, *Buzzard, et al. v. Oklahoma Tax Commission,* 992 F.2d 1073, 1075, f.n. 3 (10th Cir.1993); *United Keetoowah, etc. v. Oklahoma Tax Commission,* 510 U.S. 994, 114 S.Ct. 555, 126 L.Ed.2d 456 (1993). Oklahoma's cigarette tax collection and remittance obligation is validly imposed upon Plaintiff. *Muscogee (Creek) Nation v. Oklahoma Tax Commission, et al.*, 611 F.3d 1222, 1237 (10th Cir.2010).

Plaintiff contends there is a different result when cigarettes are manufactured in the Indian country of another Tribe or Nation and shipped to Oklahoma for sale in Plaintiff's Indian country. However, no precedent supports this contention. "What Plaintiff ultimately seeks in this case is something that no other sovereign has—the ability of a Tribe to immunize goods made within its borders from taxation and regulation by other sovereigns once those goods leave its boundaries. Just as China or New York State may not decree that their products are immune from Oklahoma taxation when those goods enter this State, neither may a Native American tribe claim such special treatment." Written Closing Argument (Dkt. # 60 at 2). The Supreme Court has repeatedly emphasized that Native American tribes do not have "supersovereign authority to interfere with another jurisdiction's sovereign right to tax" activities within its borders. *Oklahoma Tax Comm'n v. Chickasaw Nation,* 515 U.S. 450, 466, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995); *see also Rice v. Rehner,* 463 U.S. 713, 733, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983)("Congress did not intend to make tribal members 'super citizens' who could trade in a

traditionally regulated substance free from all but self-imposed regulations.")

■ The Nation's "Nation to Nation" and "Native Manufacturers" theories are contrary to the diminished sovereignty of Indian tribes, and the explicit divestiture of their authority over non-members. Indian tribes retain sovereignty of a unique, diminished and limited character only, which exists solely at the discretion of Congress. Indian tribes possess those aspects of sovereignty not withdrawn by treaty, statute, or by implication as a necessary result of their dependent status. *U.S. v. Wheeler,* 435 U.S. 313, 322–323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). "Exercise of tribal power beyond what is necessary to protect tribal self-government, or to control internal relations, is inconsistent with the dependent status of tribes, and so cannot survive without express congressional delegation." *Montana v. U.S.,* 450 U.S. 544, 564, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981).

*Duro v. Reina, et al.,* 495 U.S. 676, 686, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990) citing to *Wheeler,* notes that an implicit divestiture of sovereignty of Indian tribes has been held to have occurred in regard to relations between an Indian tribe and *nonmembers* of the tribe. The Court further emphasized the dependent status of Indian tribes within the territorial jurisdiction of the United States is necessarily inconsistent with a freedom to independently determine their external relations. Recognizing this precedent, the Tenth Circuit has held that no Indian tribe can unilaterally create sovereign rights in itself which do not otherwise exist. *Kansas v. US,* 249 F.3d 1213, 1229 (10th Cir.2001).

*Arizona Department of Revenue v. Blaze Construction Co., Inc.,* 526 U.S. 32, 34, 119 S.Ct. 957, 143 L.Ed.2d 27 (1999) applied the rationale of Duro to treat a corporation, incorporated under the laws of one tribe and owned by a member of that tribe, but doing business in the Indian country of another tribe, as the equivalent of a non-Indian. Similarly, in *Rice v. Rehner,* 463 U.S. 713, 720, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983), the Court found a State's right to tax sales to non-Indians, or Indians who are not members of the tribe with jurisdiction over the reservation on which the sale occurred, has been upheld by the Supreme Court.

■ The inherent sovereign powers of any Native American Tribe/Nation do not extend to the activities of *nonmembers* of the tribe, as Tribes/Nations do not have the right to govern persons within their limits except themselves. *Plains Commerce Bank v. Long Family Land, etc.,* 554 U.S. 316, 128 S.Ct. 2709, 2718–2719, 171 L.Ed.2d 457 (2008). As the Supreme Court recognized in *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. at 161, 100 S.Ct. 2069, "the imposition of requirements upon consumers who are not members of the tribe does not violate the principles of federal Indian law whether stated in terms of pre-emption, tribal self government or otherwise, because the third parties upon whom obligations are imposed are not constituents of the governing tribe." Neither the challenged Escrow Statute, nor the Complementary Escrow Enforcement Statute, interfere with the Nation's sale of tobacco products to its tribal members because sales to tribal members are tax-free. Okla.Stat.tit. 68, Supp.2009, § 349.1.

Further, both of these statutes apply only to sales upon which tax has been collected, as evidenced by the affixing of an Oklahoma tax stamp. Oklahoma's Escrow Statute is a penal statute, which under Oklahoma law must be strictly construed against enforcement of the statute. *Samson Resources Co. v. Cloud,* 812 P.2d 1378, 1381 (Okla.Civ.App.1991). The escrow payment requirement imposed by the

Escrow Statute applies exclusively to "units sold" in the State of Oklahoma. Okla.Stat.tit. 36, Supp.2001, § 600.23. Tobacco manufacturers who do not comply with the Escrow Statute's requirements are subject to penalties in an amount not to exceed one hundred percent (100%) of the original amount improperly withheld from escrow. Additionally the products of the non-complying manufacturer cannot be sold in the state. *Id.*

The term "units sold" is defined pursuant to Oklahoma law as "the number of individual cigarettes sold in the State by the applicable tobacco product manufacturer ... during the year in question, **as measured by the excise tax collected by the state** on the packs, or "roll-your-own" tobacco product **bearing the excise tax stamp of the State** ..." Okla.Stat.tit. 37, Supp.2009, § 600.22(10)(emphasis added).

Therefore, in conformity with Oklahoma's law regarding statutory construction, the Court finds the requirement of the Escrow Statute only attaches to cigarettes sold in the State of Oklahoma upon which taxes have been collected, as evidenced by the attachment of an Oklahoma excise tax stamp. As the Escrow Statute only applies to cigarettes on which tax has been collected, and because under the provisions of Okla.Stat.tit. 68, Supp.2009, § 349.1, sales to tribal members are tax exempt, the Escrow Statute does not apply to any sales made to the Nation's tribal members. Nor do the provisions of the Complementary Escrow Enforcement Statute apply to sales to tribal members. Okla.Stat.tit. 68, Supp.2009, §§ 360.1 through 360.9. Thus, neither the Escrow Statute nor the Complementary Escrow Enforcement Statute interfere with the Nation's right to self government as:

1. The escrow requirements are placed upon cigarette manufacturers—the Muscogee (Creek) Nation is not a tobacco manufacturer,
2. The Escrow and Complementary Statutes only apply to sales upon which State tax has been collected as evidenced by the attachment of a state excise stamp; thus, they do not apply to sales to tribal members, as sales to tribal members are tax-free sales under Okla.Stat.tit. 68, Supp.2009, § 349.1.

Further, because a corporation is an entity separate from its shareholders, the fact that a tribal member owns all the stock of a corporation does not make the corporation a tribal member for sovereignty purposes. *Baraga Products, Inc. v. Commissioner, etc.,* 971 F.Supp. 294, 296 (W.D.Mi.1997). An incorporated business entity is entitled to the same sovereign immunity as an Indian tribe only when it is organized under tribal laws, controlled by the tribe, and operated for governmental purposes. *Gristede's Foods, Inc. v. Unkechuage Nation, et al.,* 660 F.Supp.2d 442, 447–478 (E.D.N.Y.2009). However, even if a corporation is an arm of a tribe, when operating on the Indian country of another tribe, it is still subject to State taxing power. *Arizona Department of Revenue v. Blaze Construction Co., Inc. supra,* and *Rice v. Rehner, supra.*

The Nation's "Nation to Nation" and "Native Manufacturer" theories are also contrary to Supreme Court precedent. In *Mescalero Apache Tribe v. Jones, et al.,* 411 U.S. 145, 148–149, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), the Court held that "absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state laws otherwise applicable to all citizens of the state. That principle is relevant to a state's tax laws." *Id.* Likewise, the Tenth Circuit has held, "It has long been recognized Indian tribes no longer possess full attributes of sovereignty, but are unique aggregations

possessing attributes of sovereignty over both their *members and their territory.*" *Merrion, et al. v. Jicarilla Apache Tribe, et al.*, 617 F.2d 537, 541 (1980).

In *Tenneco Oil Co. v. Sac and Fox Tribe, etc., et al.*, 725 F.2d 572, 574–575 (10th Cir.1984), the Court recognized the test of a valid exercise of tribal power is whether it goes "beyond what is necessary to protect tribal-self-government or to control *internal* relations." *Id.*, citing to *Montana, Wheeler* and *Colville, supra.* "Congress's limit of authority to preempt state authority pursuant to the "Indian commerce clause" extends only to activities occurring *in Indian country,* so that activities outside of Indian country are no different than the off-reservation activities in the *Mescalero* decision." *Grand River Enterprises, etc., et al. v. Pryor, et al.*, 425 F.3d 158, 173–174 (2d Cir.2005).

Therefore, pursuant to *Mescalero,* even if a cigarette manufacturer is a tribal nation, it is subject to State regulation and taxation when the cigarettes **leave the manufacturing Nation's Indian country.** Thus, if a manufacturing nation is a noncompliant tobacco manufacturer, its products may be **seized outside of Indian country** under Oklahoma's tax and escrow statutes. The Nation's theory would require the Court to afford the protection of Indian Country from coast to coast, in spite of *Mescalero,* on the sole basis the cigarettes were manufactured in Indian Country and ordered by the Nation.

Therefore, precedent establishes States have the right to tax sales of cigarettes and other tobacco products occurring within the Indian country of a Tribe, except those to tribal members. Precedent also makes it clear that Indian tribes going beyond their Indian Country boundaries are subject to non-discriminatory state laws, such as the challenged escrow statutes.

The Nation also argues it is entitled to tax-exempt status pursuant to "numerous treaties, including the Treaty with the Creeks, 1866, 11 Stat. 699." (Complaint, Dkt. # 4 ¶¶ 4, 6).[6] This citation combines two distinct treaties—the Treaty with the Creek and Seminole Tribes of Aug. 7, 1856, 11 Stat. 699, and the Treaty with the Creek Nation of June 14, 1866, 14 Stat. 785. Neither these, nor any of the earlier

6. Various tribes and tribal retailers have argued their particular treaties with the United States government exempted them from the usual rules that govern all other state and tribal governments. Federal and state courts have repeatedly rejected such claims to special treaty-rights immunities from state taxation and regulation. See, e.g., *Colville,* 447 U.S. at 155–56, 100 S.Ct. 2069 (rejecting argument that 1855 Lummi, Makah, or Yakima treaties "pre-empt Washington's sales and cigarette taxes" on tribal sales to nonmembers); *Keweenaw,* 477 F.3d at 893 (rejecting argument that 1842 Chippewa treaty "placed Indian commerce under the exclusive jurisdiction of federal law and stripped the states of all jurisdiction to tax it," or "was intended to prevent states from regulating trade in the [ceded] territory"); *United States v. Kaid,* 241 Fed.Appx. 747, 750 (2d Cir.2007) (rejecting argument that 1842 Seneca treaty preempted New York taxation and regulation of tribal cigarette sales to nonmembers); *Confederate Tribes and Bands of the Yakama Nation v. Gregoire,* 680 F.Supp.2d 1258 (E.D.Wash. 2010) (same with respect to 1855 Yakama treaty); *New York State Dep't of Tax. & Fin. v. Bramhall,* 235 A.D.2d 75, 85, 667 N.Y.S.2d 141, 147–48 (1997) ("The immunity from taxation that [Seneca retailers] claim here is not conferred by Federal treaties ... or by case law interpreting those treaties.... The 1784, 1789 and 1794 Treaties ... do not confer any immunity from taxation, and the 1842 Treaty ..., although it prohibits the State from taxing reservation land, does not bar the imposition of excise and sales taxes on cigarettes and motor fuel sold to non-Indians on the Seneca Nation's reservations[.]"); *Snyder v. Wetzler,* 193 A.D.2d 329, 603 N.Y.S.2d 910 (1993), *aff'd,* 84 N.Y.2d 941, 620 N.Y.S.2d 813, 644 N.E.2d 1369 (1994) (same with respect to 1842 Seneca treaty).

treaties with the Creek conferred special immunity from state taxation and regulation of tribal commerce with nonmembers. The Nation appears to be relying on Article 4 of the 1856 treaty, which provided that "no State or Territory shall ever pass laws for the government of the Creek" and that "no portion of [the reserved lands] shall ever be embraced or included within .... any Territory or State."

The United States Court of Appeals for the Tenth Circuit has acknowledged that, notwithstanding the broad language in Article 4 of the Muscogee (Creek)'s 1856 treaty and the continued status of certain tribal lands as "Indian country," tribal cigarette sales to nonmembers are subject to the same rules of state taxation and regulation that apply to other tribes. See *Indian Country, U.S.A. v. Oklahoma Tax Comm'n,* 829 F.2d 967, 985–87 (10th Cir. 1987) (distinguishing such sales from the tribal gaming activities sought to be regulated and taxed in that case).

Plaintiff's factual allegations, taken as true for purposes of the Motions to Dismiss, do not set forth a plausible claim for relief, whether viewed as a "due process" claim, an infringement of upon rights of self-governance claim, a treaty right claim, or an alleged federally protected right to promote economic development within Plaintiff's Indian country. Plaintiff's First Claim for Relief fails to state a plausible claim for relief.

**Second Claim for Relief: Alleged deprivation of equal protection.** Although styled as a claim for "equal protection", plaintiff seeks relief described as: "Declaratory Judgment That It Is Unlawful for the Defendants to Enforce A Discriminatory Taxation and Regulation Scheme against the Nation and Its Privy for Conduct within Indian Country" (Complaint, Dkt. # 2, p. 25). In order to assert a valid equal protection claim, a plaintiff must plead sufficient facts to demonstrate they have been treated differently from others with whom they are similarly situated. *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir.2002); *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir.1998). Further, Plaintiff must prove the unequal treatment was a result of intentional or purposeful discrimination. *Id.*

Plaintiff is, admittedly, a non-compacting tribe. Sales to members of non-compacting tribes by licensed retailers of those tribes are tax free. Okla. Stat. tit. 68, § 349.1B. Sales to all others are at the regular Oklahoma cigarette excise tax rate. This is the rate applicable to sales of cigarettes throughout the state, except as may be varied by compact. Okla. Stat. tit. 68, § 349.1A; Okla. Stat. tit. 68, § 346.

The Oklahoma cigarette tax is an excise tax, Okla. Stat. tit. 68, § 203. It is lawfully imposed upon performance of an act, or enjoyment of a privilege within Oklahoma. *Scott–Rice Company v. Oklahoma Tax Commission,* 503 P.2d 208 (Okla.1972). The obligation to pay the tax is based upon the voluntary action of the person taxed. *In re: City of Enid,* 195 Okla. 365, 158 P.2d 348 (1945). The impact of the tax is upon the consumer, and is evidenced by the affixing of a stamp by wholesalers. Okla. Stat. tit. 68, § 302; Okla. Stat. tit. 68 § 305. The imposition and collection of this tax on sales of cigarettes in Indian country has been upheld as to all transactions, except sales to tribal members by tribally licensed retailers of the same tribe. *Moe, Colville, Potawatomi, Buzzard* and *Muscogee I, supra.*

The Second Claim for Relief fails to set forth a plausible claim that Plaintiff is treated differently from others similarly situated, or that any alleged unequal treatment was a result of intentional or purposeful discrimination.

**Plaintiff's Third Claim for Relief: "Preemption Under Indian Trader Statutes".**

This claim contains no allegation that a federally licensed trader is involved; the identity of any federally licensed trader; or the licensed place of business of any federally licensed trader. Rather, this claim consists primarily of "labels and conclusions" and "formulaic recitation of the elements of a cause of action" which, under the *Twombly* rule, "will not do." *Robbins, et al. v. State of Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008).

The subject of the Indian Trader Statutes is trade with Indians *on any reservation.* 25 U.S.C. § 261 and 25 C.F.R. § 140.1. Licenses issued under the Statutes are for a location within a reservation. A license to trade cannot be issued unless the proposed licensee has a right to use of the land on which the business is to be conducted. See 25 C.F.R. § 140.11. Trading privileges granted by the license are restricted to the place specified in the license. 25 C.F.R. § 140.14.

The original Muscogee reservation created by treaty was disestablished as a part of the allotment process. *Murphy v. Sirmons,* 497 F.Supp.2d 1257, 1290 (E.D.Okla. 2007), citing and collecting authorities, including Congressional recognition that all Indian reservations, as such, have ceased to exist in Oklahoma. "The Indians of Oklahoma were an anomaly in Indian-white relations ... There were no Indian reservations in Oklahoma ... The reservation experience that was fundamental for most Indian groups in the twentieth century was not part of Oklahoma Indian history." *Osage Nation v. Irby,* 597 F.3d 1117, 1125 (10th Cir.2010).

Further, assuming Plaintiff established the existence of an Indian trader, that would still not be sufficient to state a plausible claim for violation of the Indian Trader Statutes. 25 U.S.C. §§ 261, et seq. In a challenge to a statute similar to Oklahoma's, the United States Supreme Court held the rationale of *Moe* and *Colville* required rejection of the proposition the Indian Trader Statutes bar all state-imposed burdens on Indian traders. *Milhelm,* 512 U.S. at 74, 114 S.Ct. 2028.

The *Milhelm* Court noted the state law was not a tax directly imposed upon Indian traders for trading with Indians, but instead, a law designed to prevent circumvention of concededly lawful taxes owed by non-Indians. Therefore, the Court held that Indian traders are not wholly immune from state regulation which is reasonably necessary to the assessment or collection of lawful state taxes. *Id.* at 74–75, 114 S.Ct. 2028. The Tenth Circuit has similarly narrowly construed the application of the Indian Trader Statutes. *Sac and Fox Nation, etc., et al. v. Pierce,* 213 F.3d 566, 580–583 (10th Cir.2000); See also, *U.S. v. Baker,* 63 F.3d 1478, 1489–1490 (9th Cir. 1995), cert. den., 516 U.S. 1097, 116 S.Ct. 824, 133 L.Ed.2d 767.

There is no plausible claim of a tax imposed upon an Indian Trader, nor, were the Court to assume, arguendo, the existence of an Indian Trader, no plausible claim that imposition of any duties in the collection of validly imposed state excise taxes constitute an actionable interference with the duties of an Indian Trader. See, *Moe, Colville, Potawatomi,* and *Milhelm, supra.*

**Plaintiff's Fourth Claim for Relief: Violation of the Indian Commerce and Supremacy Clauses.** Plaintiff claims taxation of "native manufactured products that have value added and are sold exclusively within Indian country violates federal policy and Supreme Court precedent."

The Tenth Circuit addressed a similar claim in previous litigation between Plaintiff and the State. The Tenth Circuit held: "Necessarily then, MCN cannot seri-

ously argue that the Indian Commerce Clause, *of its own force,* automatically bars or preempts a state from enforcing its tax laws outside Indian country, even if such enforcement significantly touches the political and economic concerns of MCN. To the extent MCN's amended complaint alleges otherwise, it fails to state a claim under the Indian Commerce Clause...." *Muscogee (Creek) Nation v. Oklahoma Tax Commission, et al.,* 611 F.3d 1222, 1237 (10th Cir.2010) ("*Muscogee I*"); See also, *State ex rel. Edmondson, etc. v. Native Wholesale Supply,* 2010 OK 58, ¶¶ 30–33, 237 P.3d 199 ("*Edmondson*").

The Supreme Court first rejected the notion of any automatic exemption of tribal sales from state excise taxes pursuant to the Commerce Clause in *Moe,* at 481, fn. 17, 96 S.Ct. 1634. Next, in *Colville,* the Supreme Court, citing to *Moe,* rejected the "... stark and rather unhelpful notion that the Commerce Clause provides an '*automatic* exemptio[n]' as a matter of constitutional law'...", noting that the Clause is not taken "entirely out of play" in the field of state regulation of Indian affairs. *Id.*

Plaintiff's claim that the State's right to tax sales of cigarettes within Plaintiff's Indian country (except sales to tribal members) is foreclosed under the "Indian Commerce Clause" when cigarettes sold are "native manufactured" is without precedent. Oklahoma may tax all cigarette sales within Plaintiff's Indian country, except sales to Plaintiff's tribal members, which does not burden or frustrate tribal self-government or run afoul of the Congressional enactments dealing with the affairs of reservation Indians. See, *Moe, Colville, and Potawatomi, supra.*

The Tenth Circuit recognizes this as settled law. *Buzzard, et al. v. Oklahoma Tax Commission,* 992 F.2d 1073, 1075, f.n.3 (10th Cir.1993), cert. den.; *United Keetoowah, etc. v. Oklahoma Tax Commission,* 510 U.S. 994, 114 S.Ct. 555, 126 L.Ed.2d 456 (1993). Oklahoma's cigarette tax collection and remittance obligation is validly imposed upon Plaintiff. *Muscogee (Creek) Nation v. Oklahoma Tax Commission, et al.,* 611 F.3d 1222 (10th Cir.2010) ("*Muscogee I*").

Plaintiff's claim that Oklahoma's cigarette tax enforcement scheme interferes with some implied right of intra-tribal movement of goods without State interference, represents the type of strict, absolutist view of the Indian Commerce Clause which was rejected in *Muscogee I. Id.* at 1236.

Plaintiff also claims there is value added to "native manufactured" products sold. This type of claim was also rejected by the Supreme Court, which held:

> It is painfully apparent that the value marketed by the smokeshops to persons coming from outside is not generated on the reservations by activities in which the Tribes have a significant interest [citations omitted]. What the smokeshops offer these customers, and what is not available elsewhere, is solely an exemption from state taxation .... *we do not believe that principles of federal Indian law, whether stated in terms of pre-emption, tribal self-government, or otherwise, authorize Indian tribes thus to market an exemption from state taxation to persons who would normally do their business elsewhere.*
>
> *Colville,* at 155, 100 S.Ct. 2069.

Plaintiff cannot complain that state taxation or regulation are inflicting economic harm when the alleged harm occurs in a market which would not exist, but for Plaintiff's marketing of an exemption from escrow and cigarette excise tax requirements. To paraphrase the Supreme Court's rejection of a similar argument in *Wagnon v. Prairie Band Potawatomi Nation,* 546 U.S. 95, 114, 126 S.Ct. 676, 163 L.Ed.2d 429 (2006): Plaintiff seeks to in-

crease revenues by purchasing untaxed and non-escrow compliant cigarettes. But Plaintiff cannot invalidate the Oklahoma tax or escrow requirements by complaining about a decrease in revenues. See, also, *Colville,* at 155–157, 100 S.Ct. 2069.

In *Milhelm,* the Supreme Court noted that *Moe, Colville and Potawatomi* "... make clear that the States have a valid interest in ensuring compliance with lawful taxes that might easily be evaded through purchases of tax-exempt cigarettes on reservations; that interest outweighs tribes' modest interest in offering a tax exemption to customers who would ordinarily shop elsewhere ..." *Id.* at 73, 114 S.Ct. 2028.

With regard to the "probable demand" mechanism, the Court held: "We are persuaded, however, that New York's decision to staunch the illicit flow of tax-free cigarettes early in the distribution stream is a "reasonably necessary" method of "preventing fraudulent transactions," one that "polices against wholesale evasion of [New York's] own valid taxes without unnecessarily intruding on core tribal interests." " *Id.* citing to *Colville,* at 160, 162, 100 S.Ct. 2069. The sole purpose and justification for the quotas on untaxed cigarettes is the State's legitimate interest in avoiding tax evasion by non-Indian consumers. By imposing a quota on *tax-free* cigarettes, New York has not sought to dictate the "kind and quantity of goods and prices at which such goods shall be sold to Indians." *Milhelm, at* 75–76, 114 S.Ct. 2028.

In *Milhelm,* New York, like Oklahoma, had determined that large quantities of unstamped cigarettes were being purchased by non-Indians from reservation retailers. Since New York does not stamp cigarettes to be sold tax free to tribal members, the state enacted regulations, limiting the quantity of untaxed cigarettes that wholesalers might sell to tribes and tribal retailers. The "probable demand" for untaxed cigarettes could be determined by an agreement with a tribe, or, absent agreement, by a formula for calculation, based on average per capita cigarette consumption. *Id.* at 64–67, 114 S.Ct. 2028.

Oklahoma's system is simpler and less onerous than the system described in *Milhelm.* Tax-free stamps are affixed by Oklahoma-licensed wholesalers to cigarettes destined for tribal retailers. Okla. Stat. tit. 68, § 349.1.C. Determination of "probable demand" is based upon reliable sources of public information. Okla. Stat. tit. 68, § 349.1.C.1. Preliminary determinations are furnished non-compacting Tribes/Nations, which may counter with verifiable information regarding probable demand. Okla. Stat. tit. 68, § 349.1.C.2. After any Tribal/Nation submission has been considered, a final determination of probable demand is made and furnished the Tribe/Nation. Okla. Stat. tit. 68, § 349.1.C.3. Procedures are in place to appeal probable demand determinations, including the right to appeal to the Oklahoma Supreme Court from a final order.

As determined by the Court in *Milhelm,* Oklahoma's tax enforcement system is a "reasonably necessary" method of "preventing fraudulent transactions," one that "polices against wholesale evasion of [Oklahoma's] own valid taxes without unnecessarily intruding on core tribal interests." The integrity of the system is preserved by policing state-licensed wholesalers who receive and affix tax-free stamps. *Id.*

During oral argument Nation's counsel objected to the State's "probable demand" for untaxed cigarettes, first arguing the Nation had no input in the establishment of the Nation's "probable demand." This is not the case. As noted above, Oklahoma's statute specifically provides for such input, providing that after the Tax Commission makes its determination of probable demand, the preliminary determination is furnished to the tribe or

nation "which may submit for consideration by the Tax Commission, any verifiable information in its possession regarding such probable demand, including, but not limited to, a verifiable record of previous sales to tribal members or other statistical evidence." Okla.Stat.tit. 68 Supp.2009, § 349.1(C)(2). Further, as demonstrated by Exhibit "B" to the Oklahoma Tax Commission's Motion to Dismiss (Dkt. # 35)[7], the Tax Commission provided the Nation's Principal Chief with a copy of its preliminary probable demand determination and afforded the Nation an opportunity to dispute, or object to the calculation and to present evidence in support its position. The Nation did not take advantage of this opportunity. Exhibit B also shows the Nation allocated its tax-free stamps among State wholesalers the Nation selected.

Secondly, the Nation's counsel argued the Nation's rights are impermissibly burdened because the Nation cannot obtain tax-free stamps and affix the stamps itself. The Nation is required to obtain tax-free cigarettes from State licensed wholesalers who affix the tax-free stamps. The requirement that cigarettes be acquired through State licensed wholesalers does not constitute an impermissible burden on the Nation's right to self-governance, or violate any rights of the Nation. The purpose of the requirement is to prevent tax evasion. The requirement is a means of tracking and accounting for all cigarettes sold within the Nation's Indian country.

*Keweenaw Bay Indian Community v. Rising,* 477 F.3d 881 (6th Cir.2007), presented facts similar to this case—where the tribal entity involved had been guilty of "repeated, brazen and willful attempts to avoid remittance of the tax so as to profit from illegal sales of tax-free cigarettes to non-tribal members—which have wrongfully deprived the state of legitimate revenue." *Id.* at 892. In that case, the Sixth Circuit Court of Appeals found that such repeated, brazen and willful acts by the tribe "forced the state to take a more aggressive approach to the collection of tobacco taxes." *Id.* In Keweenaw the Court upheld the State's abandonment of its optional "quota system" with compacting tribes similar to Oklahoma's, and the adoption of a more burdensome refund system. *Id.* at 884.

Here, the State argues it would lose the ability to track and account for all tax-free cigarettes sold on the Nation's Indian country, if, rather than using State licensed wholesalers to stamp cigarettes, the State permitted the Nation to affix tax-free stamps. The Attorney General argued in his written closing, "the State does not choose to use the Muscogee (Creek) Nation as the fox to guard the State's tobacco tax henhouse, nor is it required to do so by federal law." (Dkt. # 131, at 4 and 7). The Court finds the use of State licensed wholesalers is reasonably necessary to avoid tax evasion, and under the teachings of *Colville, Milhelm, and Keweenaw* it is permissible.

Within this Claim are also allegations of federal preemption pursuant to two specific statutes. Plaintiff first cites the Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. §§ 387, et seq. The Act provides, however, that no provision of the subchapter is to limit or otherwise affect "... any State, tribal, or local taxation of tobacco products." 21 U.S.C. § 387, p. (a)(1). Therefore, a plain reading of the statute reveals the Act is directed toward

7. In considering a motion to dismiss, courts may consider public records which controvert averments in the complaint without converting the motion to one for summary judgment. *In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 19 (1st Cir.2003); *SK Finance SA v. LaPlata County,* 126 F.3d 1272, 1275 (10th Cir.1997).

smoking cessation and safety issues, not taxation.

Plaintiff also claims preemption pursuant to the Native American Business Development, Trade Promotion and Tourism Act, 25 U.S.C. §§ 4301, et seq., but fails to cite a specific provision of the Act which preempts the field. None appears in the Act. Again, a plain reading of the Act reveals it is not designed to preempt the field with regard to taxation of sale of tobacco products.

There is no plausible claim of preemption pursuant to the Indian Commerce Clause or other federal statute.

**Fifth Claim for Relief: Violation of Tribal Self–Government.** Plaintiff's Fifth Claim ignores years of ruling Supreme Court precedent regarding the right of States to tax sales of cigarettes and tobacco products occurring on Indian country.

Plaintiff's Fifth Claim is not plausible in light of precedent which establishes Oklahoma may tax all cigarette sales within Plaintiff's Indian country, except sales to Plaintiff's tribal members. Such taxation does not burden or frustrate tribal self-governance, or run afoul of Congressional enactments dealing with the affairs of reservation Indians. *Moe, Colville, Potawatomi, supra.* The Tenth Circuit recognizes this as settled law. *Buzzard, et al. v. Oklahoma Tax Commission,* 992 F.2d 1073, 1075, f.n.3 (10th Cir.1993), cert. den.; *United Keetoowah, etc. v. Oklahoma Tax Commission,* 510 U.S. 994, 114 S.Ct. 555, 126 L.Ed.2d 456 (1993). Oklahoma's cigarette tax collection and remittance obligation is validly imposed upon Plaintiff. *Muscogee (Creek) Nation v. Oklahoma Tax Commission, et al.,* 611 F.3d 1222, 1237 (10th Cir.2010).

 Manufacturers of "native produced" products are subject to State laws of general application outside their own Indian country. *Mescalero Apache Tribe v. Jones, et al.,* 411 U.S. 145, 148–149, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). Plaintiff has not established the Oklahoma laws at issue are anything but laws of general application, or that the Oklahoma laws are specifically directed to the manufacturers of "native produced cigarette" and tobacco products.

The Fifth Claim for Relief fails to state a plausible claim for relief.

**Sixth Claim for Relief: Violation of Right of Equal Protection and Right to Be Free from Discrimination.** This Claim is a reiteration of Plaintiff's First Claim and Second claims for relief, but are asserted on behalf of "... all the members and licensees of the Nation ..." in the Nation's parens patriae capacity. Parens patriae cannot be used to confer standing on a Tribe to assert the rights of only a few members. *US v. Santee Sioux Tribe, etc., et al.,* 254 F.3d 728, 734 (8th Cir.2001). The Commissioners contend the Nation cannot proceed parens patriae based upon publicly-available information that the resident membership of the Nation is 54,228 persons (2009 Oklahoma Indian Nations Pocket Pictorial Directory), while there are about 32 Muskogee-licensed cigarette retailers (Oklahoma Tribal Retailers List). Taking the Complaint on its face, the Nation seeks to advance the private and commercial interests of those retailers that engage in purchase and sale of non-escrow compliant, non-Oklahoma tax paid cigarettes. This is not a substantial portion of the Nation. Further, this claim for relief is insufficient for the same reasons set forth in the discussion of Plaintiff's First and Second Claims for Relief *supra.*

**Conclusion.** Plaintiff has failed to state a plausible claim of a violation of federal law. Therefore, the Court is without subject matter jurisdiction. The Ex Parte Young exception to the 11th Amendment and sovereign immunity possessed by the Commissioners are not applicable because

there is no plausible claim of a violation of federal law to be prospectively enjoined.

**Accordingly,** these proceedings are dismissed Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction, and alternatively, for failure to state a claim upon which relief may be granted.